EUGENE GOWER *v.* THE STATE.*

(*Nashville.* December Term, 1926.)

Opinion filed February 26, 1927.

1. **PARENT AND CHILD. Presumption of legitimacy of a child is not conclusive.**

The presumption of legitimacy in favor of a child born in wedlock may be overridden by clear, strong and convincing testimony that there was no co-habitation between husband and wife during the period when the child must in course of nature have been begotten. (Post, p. 142.)

**Citing:** Cannon v. Cannon, 26 Tenn. (7 Humph.), 410; Jackson et al. v. Thornton et al., 135 Tenn., 36.

2. **SAME. Same.**

If the testimony of one spouse is received to show the continuance of co-habitation during the pendency of a divorce suit, the testimony of the other spouse is admissible to deny such claim. (Post, p. 143.)

**Citing:** Dickinson's Appeal, 42 Conn., 491, 19 Am. Rep., 553, 7 A. L. R., page 330, Note 11, 7 A. L. R., page 333, Note 111; Rex v. Reading, Lee. Hardw., 79; Goodright v. Mass., 2 Cowp., 591, 2 L. R. A. (N. S.), 620; 6 Ann. Cas., 816; 126 Am. St. Rep., 267; Wigmore on Ev., sec. 2063, et seq.

3. **SAME. Same.**

In the absence of proof to the effect that intimate relations continued after the divorce bill, a presumption would indulge that such relations ceased after the bill was filed, and the child having been born so long a time thereafter it could not be presumed to be the product of co-habitation prior to the separation. (Post, p. 146.)

**Citing:** Re McNamara (Cal.), 7 A. L. R., 313.

---

*Presumption of legitimacy from birth of child in wedlock, see annotation in 7 A. L. R., 329; 3 R. C. L., 728; 1 R. C. L. Supp., 883; 4 R. C. L. Supp., 214; 5 R. C. L. Supp., 199.

4. **SAME. Same.**

If the marital relation continued, notwithstanding the divorce suit, the presumption of legitimacy would continue, and would not be rebutted merely by proof of adultery on part of the wife during the period of gestation. (Post, p. 146.)

Citing: Cannon v. Avery, 72 N. H., 591; Godfrey v. Rowland, 16 Haw., 377.

---

*Headnotes 1. Bastards, 7 C. J., section 6; 2. Bastards, 7 C. J., section 7; 3. Bastards, 7 C. J., section 10; Parent and Child, 29 Cyc., p. 1679; 4. Criminal Law, 17 C. J., sections 3681, 3683; 5. Parent and Child, 29 Cyc., p. 1679; 6. Bastards, 7 C. J., section 10; 7. Bastards, 7 C. J., section 7 (Anno); 8. Bastards, 7 C. J., section 7 (Anno); 9. Bastards, 7 C. J., section 7.

## FROM DAVIDSON.

Appeal from the Criminal Court of Davidson County. —HON. JOHN W. HILLDROP, Special Judge.

W. S. LAWRENCE and H. H. MOSER, for plaintiff in error.

ROY H. BRELER, Assistant Attorney-General, for State.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

The plaintiff in error was indicted under chapter 120 of the Acts of 1915 for failure to support his child. He was found guilty and ordered by the court to make a prescribed weekly payment for the child's maintenance and to enter into bond to secure obedience to this order as required by the Statute. He thereupon appealed in error to this court.

Plaintiff in error entered a plea of not guilty below, his defense being that he was not the father of the child.

The State introduced Mrs. Eula Gower, the child's mother, who testified that she and plaintiff in error were married March 23, 1925. On May 12, 1925, he filed a divorce bill against her which she answered June 6, 1925. Later, with permission of the court, she amended her answer and asked that it be treated as a cross-bill. A decree of divorce was granted to her upon this cross-bill October 14, 1925. The child was born to her March 31, 1926, ten months and nineteen days—three hundred twenty-three days, after the divorce proceedings were instituted.

The mother further testified that she and her husband did not live together after the divorce bill was filed May 12, 1925, but that they both continued to live in Nashville and that they met at times up through July, 1925, and indulged in acts of coition. That her husband was the father of this child.

Upon cross-examination, the record in the divorce suit was offered as an exhibit to her testimony but was excluded by the court.

Other proof was introduced by the State tending to show that the plaintiff in error had contributed nothing to the child's support since its birth, which, as we understand the record, is not controverted.

Plaintiff in error took the stand in his own behalf and the record in the divorce case was again offered as an exhibit to his testimony, and again excluded by the trial judge.

Plaintiff in error offered to testify that his wife was running around with other men before and after the divorce bill was filed. He offered in evidence a letter purporting to have been written by her in which she admitted acts of adultery with other men. The trial judge ruled out this evidence likewise and refused to permit any

proof of acts of adultery on the part of the wife between the time of the filing of the divorce bill and the birth of the child.

The learned special judge who tried the case filed a written opinion, which is sent up with the transcript, setting out his views with reference to the evidence which was admissible. In this opinion the court held that, in propounding his defense that he was not the father of the child, plaintiff in error was limited to the following matters:

"(a) That the child was not born in lawful wedlock, or,

"(b)  That the child was not begotten and conceived in lawful wedlock.

"(c) That the child was born after the separation of the parents, too remote from said separation to be within the period of gestation, to-wit: 10 months.

"(d) That said reputed father, during the period of gestation and at all times during which the child was begotten and during the ten months elapsing to the birth of the child, was, impotent of the body and was incapacitated from procreation, or that he was continuously, during said period, so far removed from the wife, that sexual intercourse or access to the wife was impossible."

Ruling on the offer to prove acts of adultery upon the part of the wife between the filing of the divorce bill and the birth of the child, the court said; ". . . I am limiting this to two points; first, was the defendant the husband of the prosecutrix at the time of the conception, and, second, did he have access to her at that time." Counsel stated that he had witnesses present to prove that the wife committed acts of adultery during that time. The court said: "I refuse to permit that testimony to be introduced." And in the same connection the court added: "There are but two points to be considered for

the defense; first, was the defendant too far away from his wife that access and intercourse was impossible, and second, was he incapable of procreation." Proper exception was taken to these rulings of the trial judge, and the assignments of error in this court are based upon such rulings.

There is everywhere a presumption that a child born in wedlock is legitimate. It was the common law that if the husband be within the four seas (that is, within the jurisdiction of England), and his wife have issue, no evidence is admissible to prove the child a bastard, except in the sole case of an apparent impossibility of procreation by the husband—as of his not having attained the age of puberty, etc., *Cannon* v. *Cannon,* 26 Tenn. (7 Humph.), 410.

This presumption obtained as to a child born in marriage, no matter how soon after the marriage a birth followed. That is to say the child was presumed to be legitimate unless it was shown that the husband was impotent or beyond the four seas during the period when the child must in the course of nature have been begotten. *Jackson et al.* v. *Thornton et al.,* 133 Tenn., 36.

As to children born after the death of the father, the common law went to extraordinary lengths to hold them legitimate. "In the time of Edward II, the Countess of Gloucester bore a child one year and seven months after the death of the duke, and it was pronounced legitimate. In the reign of Henry VI, Mr. Baron Rolfe expressed the opinion with apparent gravity, that a widow might give birth to a child seven years after her husband's death without injury to her reputation." *Dickinson's Appeal,* 42 Conn., 491, 19 Am. Rep., 553.

Such, however, is not the law in Tennessee. In *Cannon* v. *Cannon,* supra, although the child was born in lawful

wedlock, the circumstances proven clearly negatived the presumption that the child born was the husband's child, and the presumption of legitimacy was overthrown.

In *Jackson et al.* v. *Thornton et al.,* supra, where the child was born three or four months after marriage, the court indulged the presumption that it was legitimate, but on the distinct ground that there was no clear and convincing testimony tending to show that the husband was not the father of the child. It was conceded that upon a sufficient showing the presumption of legitimacy might be overcome, even though the husband was not beyond the four seas and was not impotent at the time the child was begotten.

The common-law rules above stated we suppose have been relaxed in England and in all the states of the union.  There remains, however, a conflict of authority as to what proof may be admitted to rebut the presumption of the legitimacy of a child born in wedlock.

Some of the States hold that such persumption may only be overcome upon satisfactory proof that the husband had no opportunity for access to his wife during the period in which the child must have been begotten.  See cases collected in II of a Note, 7 A. L. R., page 330. These decisions were apparently followed by the court below.

The weight of authority seems to be that although the husband had an opportunity for access to his wife, nevertheless the presumption of legitimacy may be overcome if the proof clearly shows that, as a matter of fact, there was no access and no intercourse.  See cases collected in III of the same Note, 7 A. L. R., page 333.

The latter rule has been followed in this State.  In *Cannon* v. *Cannon,* supra, although the husband and the wife lived together and he had opportunity for access,

proof was admitted showing licentious conduct on her
part; that her husband was an imbecile; a habit of in-
timacy between her and another man; the expressed opin-
ion of her and the other man that the child was his; the
dying declaration of the husband that the child was not
begotten by him; the want of resemblance to the hus-
band's family, and the striking resemblance of the child
to the family of the other man; and proof that the wife
when she abandoned the husband and went off with the
other man carried this child with her and they claimed it
as their own. Upon such proof it was found that the
child involved was not the child of the husband.

*Cannon* v. *Cannon*, supra, was approved in *Jackson
et al.* v. *Thornton et al.*, supra, and it is the settled
rule in Tennessee that the presumption of legitimacy in
favor of a child born in wedlock may be overridden by
clear, strong, and convincing testimony that there was
no co-habitation between husband and wife ''during the
period when the child must in the course of nature have
been begotten.''

There has been considerable controversy in the law as
to whether the testimony of the husband or of the wife
could be admitted to show that a child born in wedlock
was illegitimate. In *Rex* v. *Reading*, Lee t. Hardw. 79,
Lord HARDWICKE said that a wife was a competent wit-
ness to prove adultery between herself and the defend-
ant, because the secrecy of the act would admit of no
other proof; but it was improper on account of the inter-
est of the wife in relieving her husband of the burden
(this being a filiation proceeding), to charge the main-
tenance of the child against the defendant, upon the
mother's sole and uncorroborated testimony of the non-
access of the husband. This declaration of Lord HARD-
WICKE was followed in England for many years. But in

*Goodright* v. *Moss,* 2 Cowp., 591, in 1777, Lord MANS-FIELD announced that, for reasons of decency, morality and policy, neither husband nor wife would be permitted as a witness, to bastardize the issue of the wife after marriage by testifying to the non-access of the husband. In other words, the legitimacy of a child, as against husband and wife, was conclusively presumed.

The rule announced by Lord MANSFIELD in *Goodright* v. *Moss,* supra, has been generally adopted in the United States. See cases collected in Notes 2 L. R. A. (N. S.), 620, 6 Anno. Cas., 816, 126 Am. St. Rep., 267. There are some decisions to the contrary, as will appear from the citations just made, and Dean Wigmore has made a vigorous attack upon Lord MANSFIELD's declaration. Wigmore on Ev., sec. 2063, et seq.

The case before us does not call for an expression from this court upon the question just noted in its ordinary aspect. We think no presumption of legitimacy could obtain in behalf of a child manifestly begotten after the parents became involved in divorce litigation, prosecuted with apparent *bona fides,* in which a decree of divorce was rendered. The decree of divorce necessarily assumes that there was no condonation of offenses charged in the pleadings prior to the divorce decree.

Nevertheless, a solicitude for the welfare of the child induces us to hold admissible the evidence of the wife tending to show intercourse between her and the husband, after the divorce suit was instituted. While such a fact, if established, would involve grave consequences to the parties, the chief concern of the court should be, consistently with truth and reason, to avoid bastardizing the innocent offspring. And if one spouse is permitted to testify to such an extraordinary thing as the continuance of co-habitation during the pendency of a divorce suit,

testimony of the other spouse is admissible to deny such a claim.

Applying the conclusions announced to the case before us, we think the judgment herein must be reversed and a new trial awarded.

The record in the divorce case, in our opinion was admissible to show the situation of the parties. Exclusion of that record in this particular case worked no harm to the plaintiff in error in view of the wife's admissions as to the divorce suit. The evidence heard in the divorce suit would not of course have been competent in the present case except for purposes of impeachment of, or perhaps of judicial estoppel against, the testimony of the parties herein.

The letter written by the wife, in which she admitted acts of adultery with other men, was admissible to contradict her testimony on the trial below. The plaintiff in error should have been permitted to introduce his witnesses to show acts of adultery by the wife pending the divorce litigation. The wife having testified that there were instances of co-habitation between her husband and herself, his testimony should have been heard in rebuttal. In the absence of proof to the effect that intimate relations continued after the divorce bill, a presumption would be indulged that such relation ceased after that bill was filed, and, the child having been born so long a time thereafter, it could not be presumed to be the product of co-habitation prior to the separation. Re McNamara (Cal.), 7 A. L. R., 313.

It should be observed that bare proof tending to show that the wife committed acts of adultery pending the divorce litigation will not suffice to prove that the child was illegitimate, if it appear that the husband continued marital relations. If the marital relations continued,

notwithstanding the divorce suit, the presumption of legitimacy would continue and would not be rebutted merely by proof of adultery on the part of the wife during the period of gestation. *Cannan* v. *Avery,* 72 N. H., 591; *Godfrey* v. *Rowland,* 16 Haw., 377.

Reversed and remanded for a new trial.