**James Lawrence CUNNINGHAM, Plaintiff-Appellant,**

v.

**Judy Baker Inman GOLDEN and Steven Lee Inman, Defendants-Appellees.**

Court of Appeals of Tennessee, Eastern Section.

Feb. 24, 1983.

Application for Permission to Appeal Denied by Supreme Court May 31, 1983.

Lewis A. Combs, Jr., Harry Wiersema, Jr., Knoxville, for plaintiff-appellant.

Wilson S. Ritchie, Ann C. Short, Knoxville, for Judy Baker Inman Golden.

Frank L. Flynn, Jr., Knoxville, for Steven Lee Inman.

## OPINION

GODDARD, Judge.

James Lawrence Cunningham, Plaintiff-Appellant, appeals dismissal by summary judgment of his suit against Judy Baker Inman Golden and Steven Lee Inman, Defendants-Appellees. The critical issue raised is whether the Trial Court was correct in finding that the material facts show without dispute that the Plaintiff could not assert his paternity of Mrs. Golden's minor child who was conceived and born while Mrs. Golden was separated from but engaging in conjugal visits with her husband, Steven Lee Inman.

The controlling statutes are found in Chapter 3 of Title 36, T.C.A., particularly Section 36–302, which provides as follows:

*36–302. Petition for legitimation.*—An application to legitimate a child not born in lawful wedlock is made by petition, in writing, signed by the person wishing to legitimate such child, and setting forth the reasons therefor and the state and date of said child's birth.

The Defendants contend that the father cannot bring this case under Chapter 3 because the child was born in wedlock. On the other hand, the Appellant contends that because he is the father of the child the child was born out of wedlock, and that he is properly maintaining the suit.

Before addressing the case specifically, it is well to remember that proceedings to legitimate children, whether at the instance of the mother or the putative father, were unknown at common law and are exclusively a creature of the Legislature and that the forerunner of the statute under consideration here was adopted as Chapter 2 of the Public Acts of 1805.

Reduced to its simplest forms, this case turns on whether "out of lawful wedlock"

should be read to mean only an unmarried woman or to include a married woman who is not married to the father of the child.

Our research discloses only one jurisdiction[1] which has given the language the former meaning, while a number of others[2] —all of which are suits initiated by the mother—adopt the latter.

One Tennessee case has also touched on the question. In *Frazier v. McFerron,* 55 Tenn.App. 431, 402 S.W.2d 467 (1964), the Court was dealing with a suit brought under Chapter 2 of Title 36, the bastardy statute. Judge Carney points out that there seems to be a contradiction between the definition sections which speak of a child born out of wedlock and a later section of the statute which states that the mother and her husband may be competent witnesses, thus implying that a child is born out of wedlock only when the mother is unmarried.

In resolving the question, we note that our courts have repeatedly spoken of the presumption of legitimacy accorded a child born in wedlock.[3] Mr. Chief Justice Green reiterated the doctrine in *Gower v. State,* 155 Tenn. 138, 142, 290 S.W. 978, 980 (1927), detailing its origin under the English law:

> There is everywhere a presumption that a child born in wedlock is legitimate. It was the common law that, if the husband be within the four seas (that is, within the jurisdiction of England), and his wife have issue, no evidence is admissible to prove the child a bastard, except in the sole case of an apparent impossibility of procreation by the husband—as of his not having attained the age of puberty, etc. *Cannon v. Cannon,* 26 Tenn. (7 Humph.) 410.

This presumption obtained as to a child born in marriage, no matter how soon after the marriage a birth followed; that is to say, the child was presumed to be legitimate, unless it was shown that the husband was impotent or beyond the four seas during the period when the child must in the course of nature have been begotten. *Jackson et al. v. Thornton et al.,* 133 Tenn. 36, 179 S.W. 384.

As to children born after the death of the father, the common law went to extraordinary lengths to hold them legitimate:

> "In the time of Edward II, the Countess of Gloucester bore a child one year and seven months after the death of the duke, and it was pronounced legitimate. In the reign of Henry VI, Mr. Baron Rolfe expressed the opinion with apparent gravity, that a widow might give birth to a child seven years after her husband's death without injury to her reputation." [which leads one to question the gentleman's opinions or the lady's prior reputation] *Dickinson's Appeal,* 42 Conn. 491, 19 Am.Rep. 553.

If the Plaintiff is correct that "born out of lawful wedlock" means a child born to a woman who is not married to the father, it would seem to follow that "a child born in lawful wedlock" would mean a child born to a woman married to the father. Thus, by definition, the child would be legitimate and no presumption need be indulged. We conclude that for this presumption of legitimacy to make sense a child born in wedlock must mean a child born to a married woman and a child born out of wedlock one born to an unmarried woman.

■■■ Moreover, we are persuaded that in 1805, or for that matter in 1955, when

**1.** *Commonwealth Department v. Helton,* 411 S.W.2d 932 (App.Ky.1967).

**2.** *Pursley v. Hisch,* 119 Ind.App. 232, 85 N.E.2d 270 (Ind.App.1949); *State v. Coliton,* 73 N.D. 582, 17 N.W.2d 546 (N.D.1945); *F. v. H.,* 24 Or.App. 517, 546 P.2d 765 (Or.App.1976); *Commonwealth v. Shavinsky,* 174 Pa.Super. 273, 101 A.2d 178 (Pa.Super.1953).

**3.** *Jackson, et al. v. Thornton, et al.,* 133 Tenn. 36, 179 S.W. 384 (1915); *Cannon, et ux. v. Cannon, et al.,* 26 Tenn. 410 (1846); *Frazier v. McFerren,* 55 Tenn.App. 431, 402 S.W.2d 467 (1964); *Anderson v. Anderson,* 52 Tenn.App. 241, 372 S.W.2d 452 (1962); *State ex rel. Hardesty, et al. v. Sparks, et al.,* 28 Tenn.App. 329, 190 S.W.2d 302 (1945).

the statute was codified, the Legislature intended to make it applicable only to children of unmarried women, and did not intend that a married woman living happily with her husband and three children should be forced into court to respond to a petition of this type filed by a man who might allege only a single isolated indiscretion.

It is true that the facts of the case at bar are more aggravated than those above postulated, but if we permit the Plaintiff to proceed in this case, thus putting Mrs. Golden to her proof, it would also be necessary to permit the man in the case hypothesized to also proceed and require the woman to also respond. In this regard we recognize that there may be factual situations, perhaps even those present in this case, where a father should have a right to assert his paternity, but we believe it is the prerogative of the Legislature to enumerate the exceptional circumstances which would permit such a suit.

Further, we believe that there is some merit in the Defendants' argument that these Code Sections contemplate a non-adversarial proceeding, such as those relating to a change of name. T.C.A. 29–8–101—105.

Finally, it seems anomalous to us that a statute which was enacted for the benefit of children could be used to make those presumed in law to be legitimate illegitimate so that they then could be made legitimate again.

For the foregoing reasons the Trial Court is affirmed and the cause remanded for collection of costs below. The costs of appeal are adjudged against the Plaintiff and his surety.

SANDERS and FRANKS, JJ., concur.