MICHAEL SCOTT EVANS,                    )
                                        )
        Petitioner/Appellant,           )        Appeal No.
                                        )        01-A-01-9511-JV-00508
VS.                                     )
                                        )        Davidson Juvenile
KAREN MARIE BISSON STEELMAN,            )        No. 9419-13267
                                        )
        Respondent/Appellee.            )

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE

APPEALED FROM THE JUVENILE COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE ANDREW J. SHOOKHOFF, JUDGE

FILED

October 2, 1996

Cecil W. Crowson
Appellate Court Clerk

CLARK LEE SHAW
2525 Lebanon Road
Nashville, Tennessee 37214

STEVEN M. MOORE
30 Music Square West, Suite 301
Nashville, Tennessee 37203
        Attorneys for Petitioner/Appellant

PHILLIP W. DUER
MARY ARLINE EVANS
214 Third Avenue, North
Nashville, Tennessee 37201
        Attorneys for Respondent/Appellee

CHARLES W. BURSON
Attorney General & Reporter

JENNIFER HELTON SMALL
Deputy Attorney General
1510 Parkway Towers
Nashville, Tennessee
        Intervenor

AFFIRMED AND REMANDED

BEN H. CANTRELL, JUDGE

SEPARATE
CONCURRING OPINION:
LEWIS, J.

SEPARATE
DISSENTING OPINION:
KOCH, J.

# **O P I N I O N**

In this appeal we are asked to re-visit the question of whether a man who fathers a child by a married woman may legitimate the child. The Davidson County Juvenile Court held that the legitimation statute allowing a putative father to legitimate a child "not born in lawful wedlock" applied only to children born to unmarried women. If that interpretation holds, the appellant attacks the constitutionality of the statute on due process and equal protection grounds. We affirm the lower court's interpretation of the statute and reject the appellant's contention that the statute is constitutionally defective.

## I.

On December 13, 1994, Michael Scott Evans filed a petition in the Juvenile Court of Davidson County seeking to legitimate a male child born to Karen Marie Bisson Steelman on November 24, 1994. The petition alleged that Mr. Evans is the father of the child and that conception occurred while Mrs. Steelman was married to but separated from her husband, Jamie Steelman.

Mrs. Steelman filed an answer denying that Mr. Evans is the child's father and raising the affirmative defense of Mr. Evans' standing to prosecute the action for legitimation. The juvenile judge dismissed Mr. Evans' petition, ruling that under the current law in Tennessee he had no standing to legitimate the child.

## II.

Proceedings to legitimate children were unknown at common law. "In the absence of statutory authorization, an illegitimate child cannot be legitimated by

judicial proceedings." See 14 C.J.S. *Children Out-of-Wedlock* § 2B (1991). *Cunningham v. Golden*, 652 S.W.2d 910 (Tenn. App. 1983). In Tennessee, the statutory basis for such proceedings is found in Tenn. Code Ann. § 36-2-202:

> (a) An application to legitimate a child not born in lawful wedlock is made by petition, in writing, signed by the person wishing to legitimate such child, and setting forth the reasons therefor and the state and date of the child's birth.
>
> (b) In addition to the provisions of subsection (a), a person wishing to legitimate a child may obtain an order of legitimation for a child born to an unmarried woman by filing with the court a certified copy or a duplicate original of the acknowledgment of paternity as prescribed under § 24-7-118, § 68-3-203(g), § 68-3-302, or § 68-3-305(b). Further, a duplicate original of the voluntary acknowledgment of paternity filed with the juvenile court by a birthing institution pursuant to the provisions of § 68-3-302(e) shall be the basis for the entry of an order of legitimation by the court. Subject to the provisions of § 24-7-118, the court shall enter an order of legitimation upon the filing of the voluntary acknowledgment of paternity in either of the above situations.
>
> (c) Nothing herein shall be construed to authorize a putative father to legitimate a child or to execute any voluntary acknowledgment of paternity without the consent of the mother of such child.

In *Cunningham v. Golden*, 652 S.W.2d 910 (Tenn. App. 1983), this court interpreted the phrase, "child not born in lawful wedlock," in section (a), the only section that existed at the time, to mean a child born to an unmarried woman. In *Cooper v. Thompson*, 710 S.W.2d 944 (Tenn. App. 1985), this court followed the ruling in *Cunningham* and said, "The legitimation statutes are for the protection of the child, and are not for the purpose of allowing parents, biological or otherwise, to stake out claims to the child." 710 S.W.2d at 946. In both opinions the members of the court expressed a strong belief that a restrictive interpretation was necessary to preserve the integrity of existing families.

Were we writing on a clean slate we might interpret the statute differently. We think it is just as logical to hold that the phrase "not born in lawful

- 3 -

wedlock" means any child whose parents were not married to each other.  States with statutes using similar language have extended the right to begin legitimation proceedings to the putative father even when the mother is married to another man.[1] It also seems logical that when a woman is separated from her husband and is living with another man there is no intact family to be preserved.

But, "the legislature is presumed to know the interpretation which courts make of its enactments."  *Hamby v. McDaniel*, 559 S.W.2d 774 (Tenn. 1974).  Thus, when the legislature amended Tenn. Code Ann. § 36-2-202 in 1992, and again in 1994, it presumably knew of the interpretation given the statute in *Cunningham* and *Cooper*.  Nevertheless, it did not change the language of the statute, and the additional sections keep its scope very narrow.  Subsection (b) provides an informal procedure for obtaining an order of legitimation of a child born to an <u>unmarried</u> woman, and, subsection (c) underscores the restrictions placed on putative fathers by making the mother's consent a requirement in any legitimation proceeding.[2]  We are persuaded, therefore, that the legislature intended to restrict the operation of Tenn. Code Ann. § 36-2-202 to cases involving children born to unmarried mothers.

### III.

Before we move to the question of the statute's constitutionality, there are two points raised in the dissent that should be addressed.

First is the dissent's view that *Cunningham v. Golden* and *Cooper v. Thompson* lack precedential value because they are only Court of Appeals opinions.

---

[1] See *Johnson v. Studley-Preston*, 812 P.2d 1216 (Idaho 1991); *Durr v. Blue*, 454 So.2d 315 (La. Ct. App. 1984); Ind. Code  31-6-6.1-2(2) Supp. 1995; Iowa Code Ann. § 600 B.8 (West 1996).

[2] We are aware that the Eastern Section of this court declared subsection (c) unconstitutional as applied to fathers seeking to legitimate children born to unmarried mothers.  See *Vineyard v. Hood*, Appeal No. 03-A-01-9508-JV-00296 (Eastern Section, Court of Appeals, filed June 10, 1996).  But the case does not affect this one, as we are dealing only with subsection (a) of the statute.

Coming from a Court of Appeals Judge that is a surprising view; but beyond that, it simply does not withstand scrutiny. The dissent cites *Swift v. Kirby*, 737 S.W.2d 271 (Tenn. 1987) for the proposition that until the Supreme Court has spoken on a point of law there is no binding precedent. Then the dissent discusses unpublished opinions, which we find to be irrelevant to the point under consideration.

*Cunningham v. Golden* and *Cooper v. Thompson* are both <u>published</u> opinions in which the Supreme Court denied permission to appeal. It is true that the Supreme Court in *Swift v. Kirby* said, "This Court is not committed to all of the views expressed in an opinion of the intermediate appellate courts when we deny discretionary review." 737 S.W.2d at 277 (Tenn. 1987). But where the interpretation of Tenn. Code Ann. § 36-2-202(a) was the <u>only</u> issue decided in *Cunningham v. Golden* and was the <u>only substantive</u> issue decided in *Cooper v. Thompson*, an argument that the Supreme Court did not approve the interpretation made by the Court of Appeals cannot be made. The Supreme Court may change its mind, but until it does, those cases should be followed.

Second, we are intrigued by the dissent's assertion that there is no support for the notion that the legislature has somehow approved the result in *Cunningham v. Golden.* As the basis for that position the dissent cites a dissenting opinion in *Johnson v. Transportation Agency*, 480 U.S. 616, 107 S.Ct. 1442 (1987), (which only three members of the United States Supreme Court joined) and ignores the specific holdings of the Tennessee Supreme Court to the contrary. We cited *Hamby v. McDaniel*, 559 S.W.2d 774 (1977), in which the Court said:

> The legislature is presumed to know the interpretation which courts make of its enactments; the fact that the legislature has not expressed disapproval of a judicial construction of a statute is persuasive evidence of legislative adoption of the judicial construction, especially where the law is amended in other particulars, or where the statute is reenacted without change in the part construed. (Citations omitted.)

559 S.W.2d at 776.

We would only add that *Hargrove v. Newsome*, 225 Tenn. 462, 470 S.W.2d 348 (1971)(where the Supreme Court said the presumption was "conclusive"); *McKinney v. Hardwick Clothes, Inc.*, 217 Tenn. 457, 398 S.W.2d 265 (1966); *Southeastern Aviation, Inc. v. Hurd*, 209 Tenn. 639, 355 S.W.2d 436 (Tenn. 1962); and *New England Mutual Life Insurance Co. v. Reece*, 169 Tenn. 84, 83 S.W.2d 238 (Tenn. 1935)(where the presumption was applied to an administrative interpretation), could have been cited for the same proposition.

Perhaps the most telling indication that the legislature has approved the result in *Cunningham v. Golden*, supra, can be found in the legislative history of Tenn. Code Ann. § 36-2-202 subsequent to the court's decisions in both *Cunningham* and *Cooper*. Although Section (a) contains the term "a child not born in lawful wedlock," the legislature did not choose to change or re-define that term, or any part of that section. Section (b) provides a new procedure to legitimate a child, but by its terms is limited only to children "born to an unmarried woman." Section (c) does not directly refer to the marital status of the mtoher of the child whose legitimation is sought, but it limits the putative father's right by requiring the consent of the mother.

We presume that the legislature had the opportunity to deal with the court's holding in *Cunningham v. Golden* at the time the amendments were being debated. It chose instead to enact some substantial changes in the legitimation process without touching at all on the issue raised in that case.

**IV.**

- 6 -

Our interpretation of the statute requires us to face the question of whether the state can, consistent with due process and equal protection, pass an act giving putative fathers the right to legitimate children born to unmarried women while withholding that right when the mother is a married woman.

## a. Due Process

The Fourteenth Amendment to the federal constitution and Article I § 6 of the state constitution prohibit the state from taking a citizen's life, liberty, or property without due process of law. A parent-child relationship may rise to the level of a protected interest, because it is viewed as an interest in liberty. *Lehr v. Robertson*, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983); *Nale v. Robertson*, 871 S.W.2d 674 (Tenn. 1994). The right to raise a child is also a right of privacy guaranteed by the Tennessee Constitution. *Hawk v. Hawk*, 855 S.W.2d 573 (Tenn. 1993). But constitutional protection does not result from the "mere existence of a biological link;" an unwed father must demonstrate a "full commitment to the responsibilities of parenthood" before "his interest in personal contact with his child acquires substantial protection under the Due Process clause." *Lehr v. Robertson,* 463 U.S. at 261, 103 S.Ct. at 2993, 77 L.Ed. at 626.

Whether Mr. Evans' interest has risen to the level where it acquires constitutional protection has not been determined. For the purpose of this argument, we assume that it has. Nevertheless, the short answer to the due process argument is that the statute does not deprive him of anything. At common law he had no right to legitimate the child, and this state has never recognized that right except by the statute in question. The statute creates rights rather than taking them away, and should not be judged defective on due process grounds. We think Mr. Evans' case boils down to a question of whether his rights to equal protection have been violated by the state giving the right to legitimate a child to a man who fathers a child by an

unmarried woman while denying that right to men whose children are the product of a liason with another man's wife.

### b. Equal Protection

The right to equal protection under the law, as preserved by both state and federal constitutions, guarantees "equal privileges and immunities for all those similarly situated." *Tennessee Small Schools v. McWherter*, 851 S.W.2d 139, 152 (Tenn. 1993). The obverse of that proposition is a recognition that "things which are different in fact or opinion are not required by either constitution to be treated the same. *Id.* 851 S.W.2d at 153. See also *MCI Telecommunications Corp. v. Taylor,* 914 S.W.2d 519 (Tenn. App. 1995).

In a case brought as a paternity action pursuant to Tenn. Code Ann. § 36-2-103 (but treated by the Court of Appeals as a legitimation action) this court held that where the child was born during the mother's marriage to another man the state's interest in preserving family stability overrode any constitutionally cognizable interest of the putative father. *In the Matter of "A"*, 735 S.W.2d 232 (Tenn. App. 1987). The court quoted with approval from *Petitioner F. v. Respondent R.*, 430 A.2d 1075 (Del. 1981):

> [I]n this case, however, there exists the very powerful countervailing public interest in promoting the marital relationship, preserving intact an existing family unit, and protecting the minor child from confusion, torn affection, and the lifelong stigma of illegitimacy. Thus, even assuming *arguendo* that the putative father has a constitutionally cognizable interest, that interest would be outweighed by the competing public interest and public policy in this case, and he must be denied judicial access.

735 S.W.2d at 238, 430 A.2d at 1079.

In *Matter of "A"*, this court also rejected the putative father's argument that the paternity statute violated his right to equal protection by giving the right to file a petition to the mother and not to him. We found that the putative father was not in the same category or circumstances as those within the family. We think that a person seeking to legitimate a child born to a married woman is also in a fundamentally different position from a man seeking to legitimate a child born to an unmarried woman. The state's interest in preserving the family justifies the state's decision to give the right of legitimation to one and not the other.

The judgment of the trial court is affirmed and the cause is remanded to the Juvenile Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, JUDGE

SAMUEL L. LEWIS, JUDGE
SEPARATE CONCURRING OPINION

WILLIAM C. KOCH, JR., JUDGE
SEPARATE DISSENTING OPINION