IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

**FOR PUBLICATION**

**Filed:  March 30, 1998**

MICHAEL SCOTT EVANS,                    )
                                        )
    Petitioner/Appellant,          )
                                        )    DAVIDSON COUNTY
                                        )    JUVENILE
Vs.                                     )
                                        )
                                        )    HON. ANDREW J.
KAREN MARIE BISSON STEELMAN,            )    SHOOKHOFF, JUDGE
                                        )
    Respondent/Appellee,           )
                                        )    NO. 01S01-9701-JV-00019
                                        )
                                        )

and

IN THE MATTER OF: SEAN MICHAEL )
CRAWFORD, A CHILD UNDER 18     )
YEARS OF AGE, THOMAS MICHAEL   )
CIHLAR,                        )
                               )    DAVIDSON CIRCUIT
    Petitioner/Appellant,   )
                               )
Vs.                            )    HON. THOMAS W. BROTHERS,
                               )        JUDGE
                               )
MARY ANN CRAWFORD and          )
RONALD SHANE CRAWFORD,         )
                               )
    Respondents/Appellees.  )    NO. 01S01-9703-CV-00046

**FILED**

**March 30, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

**Attorneys for Appellant Evans:**

Clark Lee Shaw
Nashville, Tennessee

**Attorneys for Appellee Steelman:**

Philip W. Duer
Nashville, Tennessee

Mary Arline Evans
Nashville, Tennessee


**Attorney for Appellant Cihlar:**

Wayne Detring
Hendersonville, Tennessee

**Attorney for Appellees Crawford:**

John L. Schlechty
New York, New York


**Attorney for Amicus Curiae,
Samuel T. Bartle, M.D.:**
R. Miles Mason
Memphis, Tennessee

Of Counsel:
Professor Barbara Kritchevsky
Memphis, Tennessee

**Attorney for the State of Tennessee:**

John Knox Walkup
Attorney General & Reporter

Michael E. Moore
Solicitor General

Linda A. Ross
Associate Solicitor General

Kimberly M. Frayn
Assistant Attorney General
Nashville, Tennessee

# O P I N I O N

COURT OF APPEALS AFFIRMED.                    ANDERSON, C.J.

We granted the applications for permission to appeal and consolidated these two cases to decide whether, pursuant to Tenn. Code Ann. § 36-2-202 (1996 Repl.)(repealed 1997), a child is "born out of wedlock" when the child's mother is married, but not to the biological father, at the time of the child's birth. If not "born out of wedlock," the biological father has no standing to legitimate the child.

At this juncture, we recognize that after the granting of the applications in these cases, the Legislature repealed the statute under interpretation. Moreover, at the same time that it repealed the statute, it established "a single cause of action to establish parentage of children . . . ." Under the new legislation, "child born out of wedlock" is specifically defined to mean "a child born to parents who are not married to each other when the child was born." The new legislation, however, does not apply to the cases before the Court since the General Assembly specifically declined to make it retroactive. 1997 Tenn. Pub. Acts, ch. 744, §§ 1 & 2.

We hold in the cases before the Court that the phrase "not born in lawful wedlock," as used in Tenn. Code Ann. § 36-2-202(a), applies only to a child born to an unmarried woman. We further reject the contention that this interpretation violates due process and equal protection principles. Consequently, the Court of Appeals' decisions holding that the putative fathers in these cases have no standing under Tenn. Code Ann. § 36-2-202 to file a petition for legitimation are affirmed.

## BACKGROUND

### Evans v. Steelman

Karen Marie Steelman married Jamie R. Steelman in July 1993. In January 1994, Karen Steelman left her husband. The petitioner, Michael Scott Evans, and Karen Steelman moved into an apartment, after which they regularly had sex. After discovering that she was pregnant in March 1994, Steelman

acknowledged to Evans and his family, as well as to medical providers and other acquaintances, that Evans was the child's father.

Later, the relationship between Steelman and Evans deteriorated. On November 24, 1994, Steelman gave birth to a son, Jacob Ryan Steelman. She listed her husband, Jamie Steelman, as the child's father. Evans found out about the child's birth and on December 13, 1994, filed a petition to legitimate the child in the Davidson County Juvenile Court. Karen Steelman opposed the legitimation petition, asserting that Evans had no standing under Tenn. Code Ann. § 35-2-202(a) to file such a petition since Jacob Steelman was born in lawful wedlock. On June 15, 1995, Evans filed a formal acknowledgment that he was Jacob's biological father with the Putative Father Registry maintained by the Tennessee Department of Human Services. Thereafter, the juvenile court judge dismissed the legitimation petition on the grounds that Evans had no standing. A majority of the Court of Appeals affirmed, while Judge Koch dissented.

### In the Matter of Sean Michael Crawford

Mary Ann Crawford and Ronald Sean Crawford were married in July 1988. In early 1991, during a period in which the Crawfords were separated, Mary Crawford and the petitioner, Thomas Cihlar, had a romantic relationship; Cihlar asserts that Crawford lived with him for approximately four months, during which time she became pregnant. Crawford later reunited with her husband. On November 29, 1991, Crawford gave birth to a son, Sean Michael Crawford.

Two and one-half years later, on July 26, 1994, Cihlar filed a petition to legitimate the child alleging that he is the father of Sean; that he has at all times acknowledged his paternity; that since the child's birth, he has exercised weekly visitation with him; and that he has paid child support to Crawford. In December 1994, after the Crawfords filed a response to Cihlar's petition, the trial court entered an agreed order granting Cihlar's petition, establishing a visitation schedule and

setting child support. In January 1995, after Cihlar filed a petition seeking custody of Sean, the Crawfords moved to vacate the agreed order. The trial court granted the motion to vacate the agreed order except for the provisions relating to visitation; the court also ordered that the Crawfords re-pay Cihlar all the child support he had paid and to pay his attorney's fees.

In March 1995, the Crawfords filed a motion to dismiss the legitimation petition on the ground that the legitimation statute, Tenn. Code Ann. § 36-2-202 did not apply because the phrase "not born in lawful wedlock" did not apply to Sean. They also asserted that Cihlar had no standing to bring the legitimation action. Cihlar opposed the motion and gave notice to the attorney general that he intended to challenge the constitutionality of Tenn. Code Ann. § 36-2-202. The trial court entered an order finding that the statute was not facially unconstitutional under either the state or federal Constitutions. After conducting an evidentiary hearing, however, the trial court denied the motion to dismiss. The trial court explained its ruling, stating that "[i]t would be a mockery to the concept of marriage to describe the erratic relationship of Mary Ann and Ronald Crawford as being 'lawful wedlock'." The Court of Appeals reversed.

### STANDING

Pursuant to the common law, a child born to a married woman was presumed to be her husband's legitimate child. This presumption was universally accepted and has been repeatedly noted by this Court. Gower v. State, 155 Tenn. 138, 290 S.W. 978 (1927); Jackson v. Thornton, 133 Tenn. 36, 179 S.W. 384 (1915); Cannon v. Cannon, 26 Tenn. 410 (1846).

Actions for legitimation were unknown at common law. Allen v. Harvey, 568 S.W.2d 829 (Tenn. 1978); Cunningham v. Golden, 652 S.W.2d 910, 911 (Tenn. App. 1983), *appeal dismissed*, 466 U.S. 966, 104 S.Ct. 2336, 80 L.Ed.2d 810 (1984). Moreover, children born to unwed mothers could not inherit from their

biological father; they were considered to be the children of nobody. Allen v. Harvey, 568 S.W.2d at 831-32. In order to alleviate these disabilities, the General Assembly enacted the first legitimation statute in 1805. Id., n. 2; 1805 Tenn. Pub. Acts, ch. 2, § 1. In 1858, the legitimation statute provided:

> The application to legitimate a child not born in lawful wedlock is made by a petition in writing, signed by the person wishing to legitimate such child, and setting forth the reasons therefore.

1858 Code of Tennessee, § 3640 (1858).

The statute under which the petitions in this case were brought, Tenn. Code Ann. § 36-2-202, has practically the identical language of the 1858 statute. Tenn. Code Ann. § 36-2-202 provides in part:

> (a) An application to legitimate a child not born in lawful wedlock is made by petition, in writing, signed by the person wishing to legitimate such child, and setting forth the reasons therefor and the state and date of the child's birth.

The Court of Appeals has previously construed the phrase, "child not born in lawful wedlock" to mean a child born to an unmarried woman. Cunningham v. Golden, 652 S.W.2d at 911-12. The Court recognized the nature of legitimation statutes as being abrogations of the common law and noted that for the "presumption of legitimacy to make sense a child born in wedlock must mean a child born to a married woman and a child born out of wedlock one born to an unmarried woman." Id. at 912. See also Cooper v. Thompson, 710 S.W.2d 944, 946 (Tenn. App. 1985)("The legitimation statutes are for the protection of the child, and are not for the purpose of allowing parents, biological or otherwise, to stake out claims to the child.").

After the Cunningham and Cooper decisions, the Legislature amended Tenn. Code Ann. § 36-2-202 in 1992 and 1994, prior to its complete repeal in 1997.

The Legislature did not change the language "not born in lawful wedlock" in either 1992 or 1994. We agree with the Court of Appeals' conclusion that this failure to change the language of the statute evidences an intent on the part of the Legislature to keep the scope of the legislation narrow. Hamby v. McDaniel, 559 S.W.2d 774 (Tenn. 1974) ("[t]he legislature is presumed to know the interpretation which courts make of its enactments."). Moreover, such a conclusion is consistent with the public policy of the state as it existed during the time of the statute's existence. As the Court of Appeals noted in Cunningham,

> [The legislature] did not intend that a married woman living happily with her husband and three children should be forced into court to respond to a petition of this type filed by a man who might allege only a single isolated indiscretion.

Cunningham, 652 S.W.2d at 913.

We therefore hold that the Court of Appeals correctly concluded that the petitioners in these cases lack standing pursuant to Tenn. Code Ann. § 36-2-202 to file legitimation petitions.

## DUE PROCESS

_____The petitioners assert that the interpretation of Tenn. Code Ann. § 36-2-202 denying their standing violates their procedural and substantive due process rights by denying them a fair hearing and opportunity to establish a legal relationship with their children. The United States Supreme Court has rejected this argument as it applies to the federal constitution. In Michael H. v. Gerald D., 491 U.S. 110, 109 S.Ct. 2333, 2341-42, 2345, 105 L.Ed.2d 91 (1989), the Court found no violation of procedural due process under the Fourteenth Amendment to the United States Constitution. With regard to substantive due process, the Court stated:

> [T]he Due Process Clause affords only those protections "so rooted in the traditions and conscience of our people as to be ranked as fundamental." . . . Thus,

the legal issue in the present case reduces to whether the relationship between persons in the situation of Michael and Victoria has been treated as a protected family unit under historic practices of our society, or whether on any other basis it has been afforded special protection. We think it impossible to find that it has. In fact, quite to the contrary, our traditions have protected the marital family (Gerald, Carole, and the child they acknowledge to be theirs) against the sort of claim Michael asserts. . . . It is a question of legislative policy and not constitutional law whether California will allow the presumed parenthood of a couple desiring to retain a child conceived within and born into their marriage to be rebutted.

The petitioners also assert that the interpretation of the statute in this manner violates their due process rights under Article I, § 8 of the Tennessee Constitution. The issue for us to determine, as it was for the Supreme Court under the Fourteenth Amendment, is whether the parent-child relationship under the circumstances of the legitimacy statute rises to the level of a protected interest deserving of due process protection. We hold that it does not.

We acknowledge that the parent-child relationship implicates a right of privacy guaranteed by the Tennessee Constitution. Hawk v. Hawk, 855 S.W.2d 573 (Tenn. 1993). Moreover, the parent-child relationship may give rise to a liberty interest. Nale v. Robertson, 871 S.W.2d 674 (Tenn. 1994). The statute in this case, however, does not remove a parent-child relationship where one existed; it seeks to create such a relationship. In other words, the statute creates rights for putative fathers; it does not take them away. Since there are no protected interests implicated, there is no due process violation.

**EQUAL PROTECTION**

The petitioners contend that the interpretation placed upon Tenn. Code Ann. § 36-2-202 violates the equal protection provisions of the Fourteenth Amendment to the United States Constitution and the equal protection provisions of

-8-

the Tennessee Constitution, Article 1, § 8 and Article 11, § 8. This Court has traditionally utilized the framework developed by the United States Supreme Court for analyzing equal protection claims. Newton v. Cox, 878 S.W.2d 105, 109 (Tenn. 1994), cert. denied, 513 U.S. 869, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994); Tennessee Small School Systems v. McWherter, 851 S.W.2d 139, 152-54 (Tenn. 1993). The concept of equal protection guarantees that persons similarly situated shall be treated alike. Id. at 153. Equal protection analysis requires strict scrutiny of a legislative classification only when the classification interferes with the exercise of a "fundamental right" or operates to the peculiar disadvantage of a "suspect class." Newton v. Cox, 878 S.W.2d at 109. If no fundamental right or suspect class is affected, the court must determine whether there is some rational basis to justify a classification set out in a statute. Id. at 110.

We conclude that the statute in the present case does not affect a fundamental right or a suspect class and that the State's interest in preserving the integrity of the family is a rational basis for the statute that overrides the interest of the putative father. See In the Matter of "A", 735 S.W.2d 232, 237 (Tenn. App. 1987)(finding three State interests which justify prohibition of suits seeking to establish paternity by persons such as petitioners: marital harmony, preservation of the family unit, and the best interests of the child). Moreover, we agree that with the Court of Appeals that "a person seeking to legitimate a child born to a married woman is also in a fundamentally different position from a man seeking to legitimate a child born to an unmarried woman." Accordingly, the classification created by the statute does not treat *similarly situated* persons differently. We therefore find no equal protection violation in our interpretation of Tenn. Code Ann. § 36-2-202.

## CONCLUSION

For the reasons discussed above, the judgments of the Court of Appeals are affirmed. Costs are taxed to petitioners, Michael Scott Evans and Thomas Matthew Cihlar, for which execution may issue if necessary.

_____
RILEY ANDERSON, Chief Justice


**CONCUR:**

Drowota, Reid, Birch, and Holder, JJ.