# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
June 21, 2011 Session

## KIMBERLY SHEA (MATHENY) COYLE v. GREGORY E. ERICKSON, et al.

**Appeal from the Chancery Court for Knox County**
**No. 177609-2      Hon. Daryl Fansler, Chancellor**

---

**No. E2010-02585-COA-R9-CV-FILED-AUGUST 24, 2011**

---

Plaintiff brought this declaratory judgment action to have the Court declare that she was entitled to the proceeds of a trust fund, as she was the legitimate child of her father. The Trial Court granted partial summary judgment on the grounds that all the records of her birth, baptismal records, and the parents divorce, and the father never questioning her legitimacy, established her legitimacy, and the defendant's son who challenged her right to the proceeds had no standing to question her legitimacy. On appeal, we affirm.

**Tenn. R. App. P.9 Appeal by Permission; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, J., and JOHN W. MCCLARTY, J., joined.

Dale C. Allen, Luis C. Bustamante, and Darsi N. Sirknen, Knoxville, Tennessee, for the appellant, Shawn Claytor Matheny.

Charles M. Finn and Wayne R. Kramer, Knoxville, Tennessee, for the appellant, Gregory E. Erickson, Trustee.

W. Tyler Chastain and Margo J. Maxwell, Knoxville, Tennessee, for the appellee, Kimberly Shea (Matheny) Coyle.

# OPINION

## Pleadings

Plaintiff, Kimberly (Matheny) Coyle, brought this action for Declaratory Judgment, Trust Distributions and Damages, against Gregory Erickson, Trustee, Shawn Claytor Matheny, Ann Matheny (Vanover), and Albert R. Matheny III, alleging she was the legitimate child of Edwin Holloway Matheny, deceased, and was a beneficiary of his 1/3 share of the assets, distributions and/or terminating distributions under the Trust(s) established by the Last Will and Testament of Albert Ralston Matheny, and the life estate interests established by the Last Will and Testament of Louise Lutz Holloway. Plaintiff asked the Court to order the Trustee to provide an accounting and distribution of her share of the assets, or remove the trustee and appoint a special fiduciary, and award damages for breach of trust, as well as attorney's fees and costs.

Plaintiff alleged that her mother, Brenda Spaulding, was married to Edwin Holloway Matheny in Knoxville on January 26, 1971, and she attached a copy of their marriage certificate. She alleged that she was born on March 31, 1971, and attached a copy of her birth certificate, and a copy of the hospital birth record showing her parents to be Mr. and Mrs. Edwin H. Matheny, as well as a copy of her baptismal certificate, showing that Ann Matheny and Albert Matheny were sponsors. she alleged that her parents divorced in 1974, and attached their divorce documents, showing that she was listed as a child of the marriage, and that her mother was given custody of her and her brother, Shawn, and her father was ordered to pay child support for them. She alleged that her father visited with her until her mother remarried in 1977, and he never questioned her paternity. Further, that she had a close relationship with her paternal grandmother, Cecil Holloway Matheny, and that her grandmother established a trust fund that paid for her education, and also purchased a vehicle for her.

She further alleged that her paternal grandfather, Albert Ralston Matheny, made a will in 1960 (which was probated after his death in 1965), and he established two trust accounts which would eventually be passed to his children or their issue after Cecil Holloway Matheny's death. She alleged that her paternal grandmother's mother, Louise Lutz Holloway, made a will that gave Cecil Holloway Matheny a life estate in her assets, and then provided that the remainder would pass to her living descendants upon her death, and plaintiff further alleged that her father died in 2006, and Cecil Holloway Matheny died on June 13, 2009. She averred that this death triggered the distributions of the above-listed assets, but that the trustee had refused to distribute any assets to plaintiff, based on "rumor and accusations" that she was not a legitimate child of Edwin Holloway Matheny.

Plaintiff's brother answered and counter-claimed, alleging that Edwin Matheny was not plaintiff's natural, biological, nor adoptive father. He alleged that he was the only biological child of Edwin Matheny, although he admitted the authenticity of the documents plaintiff attached to her Complaint, but denied that plaintiff was Matheny's child.

Shawn's Counter-Complaint alleges that Edwin Matheny died on November 7, 2005, and that his portion of the Ralston Matheny Trust and the Holloway Life Estate Interests would pass to his "issue" or "descendants", but plaintiff was not Matheny's natural/biological daughter. He averred that plaintiff's mother, Brenda Claytor, was married to James Michael Spaulding from September 7, 1968 to September 15, 1970, and her mother was pregnant with plaintiff at the time they divorced. He alleged that the divorce documents of Brenda Claytor Spaulding and James Michael Spaulding stated that, as of the date of divorce, Brenda was pregnant with an unborn child. Shawn alleged that at that time, Brenda had not yet met Edwin Matheny and thus, plaintiff could not be his natural child, and he concluded that the Court should declare that plaintiff was not the "issue" nor "descendant" of Edwin Matheny, and not entitled to a portion of the estate.

Gregory Erickson (trustee) filed an Answer, stating that he had been informed that plaintiff was not the natural, biological or adopted child of Edwin Matheny, and she had no standing to bring the claims she was asserting.

Plaintiff filed answers to requests for admissions, and admitted that she had contacted James Michael Spaulding during her lifetime, but denied that she had suggested to him that Edwin Matheny could not be her natural, biological father. She reasserted that she was the natural child of Edwin Matheny in her answer.

Plaintiff then filed a Motion for Partial Summary Judgment, and in her Statement of Undisputed Material Facts, stated that she was born during her mother's marriage to Edwin Matheny, that he was listed as her father on her birth certificate and baptismal certificate, and that she was listed as their child in their divorce papers. She further stated that the Property Settlement, Custody and Child Support Agreement affirmed that she was a child of the marriage and provided that Matheny would pay child support for her and her brother, and exercise visitation. She stated that Matheny never challenged her paternity.

Erickson filed a Response and attached an Affidavit, which stated that plaintiff called him to inquire about the trust, and admitted to him that Matheny was not her biological father.

Shawn filed a copy of Brenda (Claytor) Hessey's deposition[1] and the parties filed various memoranda, and the Court then ruled.

In the Memorandum Opinion and Order, the Court found that plaintiff was born on March 31, 1971, after Brenda Claytor and Edwin Matheny were married, and that plaintiff's birth certificate listed Edwin Matheny as plaintiff's father, as did other records. The Court found that Brenda and Edwin divorced in September 1974, and that in her Complaint, Brenda alleged that two children had been born of the marriage, plaintiff and Shawn, and that Matheny admitted this in his Answer. The Court found that the final decree provided that Brenda would have custody of the two children and that the father would pay child support for them and exercise visitation.

The Court acknowledged that Brenda was married to James Michael Spaulding from September 1968 to September 1970, and was pregnant with plaintiff at the time of their divorce. The Court observed that in Spaulding's divorce Complaint, he alleged that Brenda had committed adultery, which was denied by Brenda, and the Court noted that Brenda testified in her deposition that she last had intercourse (before her pregnancy) with Mr. Matheny around June 1, 1970, and that she admitted that she and Spaulding lived together and had intercourse through June and July, 1970. The Court held that the issue that had to be resolved was whether plaintiff's parentage could be collaterally attacked by third parties seeking to defeat her existing status as eligible beneficiary under the testamentary instruments in question.

The Court stated that prior to the enactment of Tenn. Code Ann. §36-2-305 (1997), even a putative father could not contest the paternity of a child born in lawful wedlock. *See Evans v. Stillman*, 970 S.W.2d 431 (Tenn. 1998). The Court stated that, under common law, a child born during a marriage was presumed to be the husband's legitimate child, and at that time, a paternity action could not be filed against a married woman, but could only be filed concerning a child "not born in lawful wedlock."

The Court continued that plaintiff relied heavily on the case of *In re: The Trust Created by Agreement Dated December 20, 1961*, 765 A.2d 746 (N.J. 2001), wherein the collateral heirs of Seward Johnson, Sr., sought to challenge the paternity of a child born during the marriage of John Seward Johnson, Jr. The Court noted that this challenge came

---

[1] In her deposition, Hessey states that she is not sure who plaintiff's father is, as she had relations with both Matheny and Spaulding during what she thought was a reasonable window of time when plaintiff could have been conceived - Hessey admitted that she slept with Matheny before her divorce from Spaulding, and also slept with Spaulding for a short period of time after he returned from service but before they separated.

35 years after the divorce of John Seward Johnson, Jr., and that in that divorce proceeding he acknowledged paternity of the child in question. The Court stated that the New Jersey Supreme Court held that collateral parties could not challenge paternity in this manner, noting that a child born in wedlock was presumed to be legitimate, and presumed to be the legitimate offspring of the husband. The New Jersey Court stated that it was guided by this principle "particularly when both parents have acknowledged the father's paternity in a judicial proceeding and the issue has been conclusively adjudicated."

The Court continued that this principle has been universally accepted and repeated by the courts of this State, and the Court further noted that our Court has recognized that the public policy of Tennessee is to render a person legitimate rather than illegitimate, and that this policy is so strong that in one case, a man who had knowledge at the time he married a woman that she was pregnant with someone else's child was regarded by the law as having adopted that child into his family; citing *Anderson v. Anderson*, 372 S.W.2d 452 (Tenn. Ct. App. 1962; *Rooker v. Rimer*, 776 S.W.2d 124 (Tenn. Ct. App. 1989)).

The Court continued that in 1997, Tenn. Code Ann. §36-2-301 *et seq*. was enacted, and that it allowed a complaint to establish parentage of a child to be filed by the child, the child's mother, a man claiming to be the child's father, or the Department of Human Services. The Court said that defendants fit none of these categories, and that none of the cases cited by defendants allowed a third party to collaterally attack the parentage of a child, when neither the mother nor her husband had disavowed the husband's paternity. The Court said that Shawn's reliance on *In Re: Adoption of Johnson*, 678 S.W.2d 65 (Tenn. Ct. App. 1984), was misplaced, because it dealt with proceedings under the adoption statutes, and did not involve an issue of standing.

The Court ruled that at the time of plaintiff's birth she was presumed to be Mr. Matheny's legitimate child, and that no one besides her father, her mother, or herself had standing to question that presumption. The Court held that Shawn did not have standing to question it some 40 years later.

Defendants then filed a Motion seeking an interlocutory appeal, which the Trial Court granted, and this Court accepted. The issues presented for review are as follows.

1.      Whether a person presumed to be the legitimate child of a man pursuant to Tennessee domestic relations law is, as a matter of law, also his lineal descendant by blood for purposes of determining whether the presumed child is a beneficiary of testamentary instruments of the presumed father's ancestors?

2.   Whether Tenn. Code Ann. §36-2-305(b)(1) precludes defendants from challenging plaintiff's claims that she is the "issue" or "descendant" of Matheny and, as such, qualifies as a beneficiary under the testamentary instruments?

3.   Whether defendants have a legal right to challenge plaintiff's claims that she is the "issue" or "descendant" of Matheny and, as such, qualifies as a beneficiary under testamentary instruments?

4.   Whether the Trial Court erred in granting plaintiff's Motion for Partial Summary Judgment when the parties dispute whether plaintiff is the natural, biological daughter of Matheny?

5.   Whether the trustee has breached his fiduciary duties?

6.   Whether the plaintiff should get an award of attorney's fees?

**Discussion**

Defendants argue the fact that a person might be presumed to be the legitimate child of a man does not mean that such person is also the man's natural issue/descendant for purposes of determining whether such person would be a beneficiary of testamentary instruments. They state that the primary consideration in interpreting a will is the intent of the testator, and that the terms of the will must be construed in accordance with applicable law at the time of the testator's death. Defendants argue that at the time of Ralston's and Holloway's deaths, Tennessee law defined "issue" and "descendants" as only those persons naturally descended from a common ancestor. Thus, they argue that plaintiffs can only take under these testamentary instruments if she is the biological child of Matheny, regardless of whether she is legitimate.

We agree the principal consideration in interpreting a will is the intent of the testator, and that the terms of a will must be construed in accordance with the applicable law at the time of the testator's death. *Decker v. Meriwether*, 708 S.W.2d 390 (Tenn. Ct. App. 1985); *Third National Bank v. Stevens*, 755 S.W.2d 459 (Tenn. Ct. App. 1988). The cases cited by defendants for the proposition that "issue" or "descendants" means only blood/natural descendants is not conclusively stated. For example, in *Third National Bank v. Noel*, 192 S.W.2d 825 (Tenn. 1946), the context of the dispute was whether the term "issue" meant per stirpes or per capita, i.e. whether grandchildren and great-grandchildren would take equally without regard to their proximity or remoteness from the original source. Thus, the term "issue" was simply defined as "descendants of a common ancestor", and was noted as being

used instead of "children" or some other term, so that the assets could be passed down to further generations. *Id., see also* Restatement 2nd of Property, §25.9. There is no discussion as to whether "issue" must be biological, natural children.

The term "issue" was later determined to include adopted children, pursuant to a statute enacted in 1976, and thus it was ruled that use of the term "bodily heirs" was a way for the testator/settlor to avoid that result, if desired. *See Third National Bank v. Stevens*; *Banovic v. Davis*, 642 S.W.2d 153 (Tenn. Ct. App. 1982). Thus, "issue" does not always mean biological, natural children, as defendants argue.

As defendants point out, there is no Tennessee case (at the time the wills would be interpreted or now) deciding whether a legitimate child is also considered a natural, biological child of the legitimating father as a matter of law[2] for the purpose of being considered "issue" under a will/trust. There is case law which states that a child who was born illegitimate but later legitimated by his father could inherit from his grandfather's will, and it has been recognized that illegitimate children generally do not inherit under a devise, but legitimate children always do. *Scales v. Scales*, 564 S.W.2d 667 (Tenn. Ct. App. 1977); *see also* 14 C.J.S. Children out of Wedlock §27. Accordingly, "issue" or "descendants" cannot only refer to natural, biological children under Tennessee law, as defendants insist, because the aforementioned cases demonstrate that adopted, non-biological children can take, while biological but illegitimate children sometimes cannot. Moreover, the law is clear that legitimate/legitimated children are treated as the natural children of their fathers for all other purposes, not just including inheritance, but also for the purposes of custody, surname, child support and visitation, etc. *See, e.g.*, *In re Parlow*, 2001 WL 687226 (Tenn. Ct. App. June 14, 2001); 14 C.J.S. Children out of Wedlock §27.

A case that is on point from another state is *Doe v. Doe*, 20 So.3d 892 (Fla. Ct. App. 2009), wherein the trust document in question stated that only "descendants by blood" could take (which is arguably much stronger language than used by the instruments in this case). A grandchild who was born during the testator's son's marriage (wife was pregnant at the time they married) was later shown by DNA testing (32 years later) not to be his biological child, and thus the trustees sought a holding that she should not inherit as she was not "by blood". *Id*. The Florida Court of Appeals found that the child was legitimate because she was born during the testator's son's marriage to her mother, and further that the testator's son had acknowledged in his divorce from her mother that she was a child of the marriage and was ordered to pay child support for her. *Id*. The Court went on to rule that because she was legitimate, she was legally deemed to be the same as a "blood" descendant. *Id*.

---

[2] *But see State ex rel. Hickman v. Dodd, infra.*

-7-

The Court discussed that "descendants by blood" as used in the 1988 trust document could not be construed to mean those proven to be biological by DNA testing, because until the last 20 to 30 years, such testing was virtually "unthinkable". *Id.* The Court said that the presumption that a child born in wedlock was legitimate was one of the strongest rebuttable presumptions known to the law, and that traditionally, the term "descendant by blood" would have been used to exclude those who were adopted. *Id.* The Court noted that it had asked the parties to investigate whether there were any decisions barring a legitimate child born in wedlock from taking under a will/trust because said will/trust used the language "by blood", and the parties were unable to locate any such case within the United States. The Court then stated that in its own independent research, it, too, was unable to locate any such decision. *Id.* The Court then ruled there was no issue that the child was a legitimate granddaughter and rightful beneficiary of the trust.

In another case, *In re Trust Created by Agreement dated December 20, 1961*, 765 A.2d 746 (N.J. 2001), a similar factual situation was stated, in that the settlor's son married his first wife in 1956, and she gave birth to a daughter, Jenia, in 1961. The son was listed on her birth and baptismal certificates as her father. *Id.* Later, he filed for divorce and alleged adultery, claiming Jenia was not his, but later recanted that claim and signed an acknowledgment of paternity. *Id.* The divorce court granted him a divorce on the ground of desertion, but found that Jenia was a child of the marriage and that her paternity had been adjudicated. The son never contested that judgment. *Id.*

In that case, the trust document drafted by the son's father used the term "issue", and the trustees sought clarification as to whether Jenia should be included, as other beneficiaries challenged her status. *Id.* The New Jersey Supreme Court recognized that, traditionally, a child born in wedlock was presumed to be the legitimate offspring of the husband and wife, and that this presumption was universally recognized. *Id.* The Court found that in 1983, the legislature enacted the New Jersey Parentage Act, modeled after the Uniform Parentage Act, which also contained a presumption that a child born in wedlock was presumed to be the legitimate offspring of the husband. *Id.* The Court then held that "the adjudication of Seward Jr.'s paternity cements Jenia's status as an eligible beneficiary under the 1961 trust absent clear language to the contrary within the trust itself." *Id.* at 363.

Tennessee has recognized that there is a presumption that a child born to a married couple is the legitimate child of the husband, and this presumption dates back to the common law. As this Court has previously stated:

> We acknowledge that at common law and in the earlier stages of the development of the common law in this jurisdiction, the presumption that a child born during marriage was legitimate was for all practical purposes conclusive. Indeed it has been said that

"[t]his presumption obtained as to a child born in marriage, no matter how soon after the marriage a birth followed; that is to say, the child was presumed to be legitimate, unless it was shown that the husband was impotent or beyond the four seas during the period when the child must in the course of nature have been begotten." *Jackson et al. v. Thornton et al.*, 133 Tenn. 36, 179 S.W. 384 (Tenn. 1915); *Cunningham v. Golden*, 652 S.W.2d 910 (Tenn. App.1983).

*Shell v. Law*, 935 S.W.2d 402 (Tenn. Ct. App. 1996).

While this presumption has been somewhat weakened in recent years (since enactment of the current paternity legislation in the 1990's), the presumption still exists. *See* Tenn. Code Ann. §36-2-304. It is clear that at the time the wills in question would be analyzed (i.e. the 1960's and 1970's), the presumption was very strong, and could only be rebutted by "clear, cogent, and convincing" testimony. *Frazier v. McFerren*, 402 S.W.2d 467 (Tenn. Ct. App. 1964).

It is significant that in the current paternity legislation adopted in the 1990's, only the mother, husband, or child could question the presumption of legitimacy of a child born during marriage. Even a putative father could not raise an issue regarding paternity. *Evans v. Steelman*, 970 S.W.2d 431 (Tenn. 1998). It is the general rule in most states, including Tennessee,[3] that only the parents, the child, or a governmental body (such as DCS) can question the legitimacy of a child born during marriage. *See "Who May Dispute Presumption of Legitimacy of Child Conceived or Born During Wedlock"*, 90 A.L.R.3d 1032. It is the majority rule also from courts of other states that other heirs or beneficiaries have no standing to question the paternity of a child born in wedlock in actions involving death benefits/inheritance. *Id.*

In addition to the presumption that attaches to the fact that a child is born during a marriage, there is the additional fact that when the father acknowledges paternity in some manner, as Mr. Matheny did here in his divorce papers, then this fact bolsters the child's status as a legitimate child, but where a husband marries a woman knowing she is pregnant with the child of another man, and the fact is stipulated in the parties' divorce and the husband never acknowledges paternity, we have held that it was error for the trial court to order the husband to pay child support. *Pressley v. Pressley*, 1995 WL 54490 (Tenn. Ct. App. Feb. 10, 1995). Conversely, where a man signs a voluntary acknowledgment of paternity, he cannot automatically rescind it and be relieved of his child support obligation to the child when DNA tests later show that he is not the biological father. That is where the man acknowledged the paternity of a child born before his marriage to the mother, and then

---

[3] *See, e.g.,* Tenn. Code Ann. §36-2-305.

agreed that the child was his in their divorce and was ordered to pay child support. *State ex rel. Hickman v. Dodd*, 2008 WL 4963508 (Tenn. Ct. App. Nov. 21, 2008). In that case and the cases it relies upon, it was recognized that a "man who voluntarily has legitimated a child has declared that he is the child's natural father**.**" *Id., citing Welch v. Welch*, 195 S.W.3d 72 (Tenn. Ct. App. 2005).

Next, defendants argue that Shawn is not seeking to establish or disestablish plaintiff's parentage, and that it is plaintiff herself who put such matters at issue by filing this action. Defendants argue that Shawn is simply defending a legal claim of whether or not plaintiff is a proper beneficiary, and thus the current paternity statute, Tenn. Code Ann. §36-2-301 *et seq*., is inapplicable (along with its provisions regarding who can bring an action). Defendants rely on *In re Adoption of Johnson*, 678 S.W.2d 65 (Tenn. Ct. App. 1984), *In re Estate of Armstrong*, 859 S.W.2d 323 (Tenn. Ct. App. 1993), and *Shell v. Law*, 935 S.W.2d 402 (Tenn. Ct. App. 1996), as support for their argument. *In re Adoption of Johnson*, does not support defendants' argument, because the party who was ultimately allowed to dispute the child's paternity was the putative father. Similarly, in *Shell v. Law*, the action challenging paternity of the ex-husband was filed by the mother.

In *Armstrong*, the facts were that a woman named Armstrong died intestate, and Norton was alleged to be her half-sister. Norton was born to her mother and her mother's husband, Elmer Byrd, during their marriage, but the "talk" in the community was that her mother had an affair with Clyde Wells, who was also Armstrong's father, and that he was Norton's biological father. *Id.* The administrator of the intestate estate filed a declaratory judgment action to determine if Norton was Armstrong's heir, or if the estate should go to other more distant relatives. *Id.* This Court found that while there was a presumption that Norton was the legitimate child of Byrd, Norton was allowed to rebut that presumption of her legitimacy by other evidence. *Id.* Once again, this does not involve a situation where one's legitimacy is being attacked by a third party, but rather where the child herself ultimately sought to establish another as her father. *Id.* Also, Norton had not been adjudicated to be Byrd's child by a subsequent divorce decree or any other method. *Id.*

Next, defendants argue that it is the pronounced policy of this State that "true parentage is the end that should be pursued." *Shell.* Our Supreme Court has previously recognized, however, that genetics is not paramount in all parentage determinations. *See In re CKG*, 173 S.W.3d 714 (Tenn. 2005).[4] Where, as here, plaintiff is a legitimate child born

---

[4] In the *CKG* case, a woman who gave birth to children after using donor eggs was sued by the father for custody, and the father alleged that she had no standing to contest his custody of the children because she was not their biological mother. The Court ruled that she was the legal mother of the children, and had equal

(continued...)

during the marriage of her father and mother, where her father held her out to be his child throughout her life and his name is on her birth and baptismal records, where he agreed that she was his child in his divorce documents from her mother and paid child support for her, and never questioned her paternity in any way, it would be unjust indeed to allow anyone else to question her paternity 40 years later, for the purpose of taking away her status as a legitimate child and her right to take as a beneficiary as her father's issue/descendant. Not only has this not been done in this State, from our research it has not been done anywhere in the United States. The Trial Court properly granted summary judgment to plaintiff on this question of law that defendants had no standing to challenge her legitimacy.

Plaintiff argued that the trustee breached his fiduciary duties by asserting the legal position of one beneficiary against another, and that she should be given an award of her attorney's fees for having to file and prosecute this action. The trustee points out that there is a legitimate argument to be made that plaintiff might not be an intended beneficiary under the documents, and that he simply wanted to make sure that his duties were performed correctly. It does not appear that the trustee herein has breached a fiduciary duty by refusing to proceed with a distribution to plaintiff until the Court ruled on her status. Plaintiff's issues are without merit.

We affirm the partial summary judgment of the Trial Court and remand for further proceedings in the case, and the cost of the appeal is taxed jointly to Gregory E. Erickson, Trustee, and Shawn Claytor Matheny.

_____
HERSCHEL PICKENS FRANKS, P.J.

---

[4](...continued)
right to their custody.

-11-