**Barbara Ann (White) BROWN, Petitioner-Appellant,**

v.

**Ernest Ray RAINES and Margaret Helen Jones Raines, Respondents-Appellees.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Nov. 20, 1980.

Certiorari Denied by Supreme Court Feb. 2, 1981.

Donald Arkovitz, Nashville, for petitioner-appellant.

Ralph P. Christian, Nashville, for respondents-appellees.

## OPINION

CANTRELL, Judge.

There are two questions in this appeal: (1) May a parent of minor children who joins in a petition to allow them to be adopted later attack the adoption decree because no formal surrender was signed? and (2) Even if the decree is subject to attack, are the allegations and proof sufficient to obtain relief from a final judgment under Rule 60 of the Tennessee Rules of Civil Procedure?

The petitioner-appellant, Barbara Ann Brown, is the natural mother of Glenda Darlene Raines, Karen Denise Raines, Stella Diane Raines, and Patricia Gail Raines. On October 6, 1972 respondents-appellees, Ernest and Margaret Raines, petitioned the Circuit Court of Williamson County for the adoption of the above mentioned children. Appellant's sworn signature appeared in the petition whereby she stated that she had read the petition and consented to the adoption. In the ensuing adoption proceedings, however, appellant did not appear in the chambers of the Circuit Court Judge to execute a formal surrender of her children as set forth in T.C.A. § 36–114. Nevertheless, the Court issued a final decree of adoption on February 23, 1973. On August 29, 1979 appellant petitioned the Court under the same rule number under which the adoption decree was entered to have the decree set aside. She alleged that her consent to the adoption was fraudulently procured by the appellees and that the Circuit Court was fraudulently induced to sign the decree of adoption. The Trial Court dismissed the first allegation on its own motion and after a hearing on the second allegation the Trial Court found that the decree was res judicata, notwithstanding the requirements of T.C.A. § 36–114, and that it would be unconscionable to relitigate

the petition for adoption seven years after the entry of the final decree.

T.C.A. § 36–114 which was in effect at the time of the adoption proceedings herein provides that natural parents giving up their child or children for adoption shall execute a form of surrender "before a judge in chambers of chancery or circuit court . . ." Appellant contends, relying on the authority in several Tennessee Supreme Court decisions, that the adoption statutes are in derogation of common law and thus are to be strictly construed. She then reasons that the failure of the Court in the original adoption proceedings to strictly follow the statute rendered the subsequent decree of adoption null and void.

Appellant cites *Clements v. Morgan*, 201 Tenn. 94, 296 S.W.2d 874 (1956), and *Petition of Van Huss*, 207 Tenn. 168, 338 S.W.2d 588 (1960), in support of her view of the law. In *Clements v. Morgan* the Court allowed the then Department of Public Welfare to intervene in an adoption proceeding and to take custody of the child when the Chancellor had granted the adopting parents an interlocutory decree of adoption but had failed to issue a final decree within two years following the filing of the petition as required by T.C.A. § 36–124. The Court held that strict compliance with the adoption statutes, including § 36–124, was necessary to effect a legal adoption. In *Petition of Van Huss* the Tennessee Supreme Court affirmed the refusal of the Circuit Court to issue an adoption decree when the petitioner failed to meet the residency requirements of T.C.A. § 36–105. The Court reiterated its earlier holdings of the necessity of strict compliance with the adoption statutes.

Although both *Clements* and *Van Huss* contain the proposition of law on which the appellant relies, there is an essential distinction between those cases and the one at bar. In *Clements* and *Van Huss* the Supreme Court established the requirement of strict compliance with the adoption statutes in the context of the appellate review of the action of the lower courts. This requirement does not apply however when a final

decree of adoption, no longer subject to appeal, is attacked either collaterally or by an independent action in equity for relief from a judgment. In this situation the provisions of T.C.A. § 36–127 apply:

"After the final order of adoption is signed, no party to an adoption proceeding, nor anyone claiming under such a party, may later question the validity of the adoption proceeding by reason of any defect or irregularity therein, jurisdictional or otherwise, but shall be fully bound thereby, save for such appeal as may be allowed by law."

The policy behind this provision is clearly expressed in T.C.A. § 36–101. First, it is intended to protect children "from interference, long after they have become properly adjusted to their adoptive homes, by natural parents who may have some legal claim because of a defect in the adoption procedure." Second, it protects the adopting parents by preventing "later disturbance of their relationship to the child by natural parents whose legal rights have not been fully protected."

■ The same result has been reached in cases antedating the statute. Under prior case law an independent or collateral attack on a final decree of adoption could be maintained only upon a showing that the court rendering the decree lacked subject matter jurisdiction or personal jurisdiction over a necessary party. *Crocker v. Balch*, 104 Tenn. 6, 55 S.W. 307 (1900); *Redmond v. Wardrep*, 149 Tenn. 35, 257 S.W. 394 (1923); *Whitley v. Reeves*, 39 Tenn.App. 169, 281 S.W.2d 411 (1955). Thus under either T.C.A. § 36–127 or prior case law, the appellant as a party to the original proceedings is now foreclosed from claiming that the adoption is void because of the failure to comply with the surrender requirement.

We think T.C.A. § 36–127 disposes of the question of appellant's right to attack the decree. However, even if the decree is subject to attack we are of the opinion that the allegations and proof in the record are insufficient to obtain relief under Rule 60 of the Tennessee Rules of Civil Procedure.

Appellant here filed a petition in the original adoption case setting forth the facts on which she relied and praying that the adoption decree be declared null and void. While this approach does not conform to the conventional methods of seeking relief from a final judgment or order, we have treated it as a *motion for relief* under Rule 60. It was styled "petition" but was filed under the original rule number, so we are satisfied that the substance of the rule has been complied with.

■ This distinction, although having little to do with the merits of this case, is nevertheless important because as we view it the two possible avenues for relief open to the appellant are given in Rule 60. Rule 60.02(2) permits the Court to relieve a party from a final judgment if fraud was committed in the earlier proceedings, regardless of whether the fraud is denominated extrinsic or intrinsic. Since the appellant has alleged that her signature on the adoption petition was fraudulently procured and that the Court was fraudulently induced to enter the decree of adoption, Rule 60.02(2) seems to be designed to allow relief under these circumstances; however, the rule goes on to provide that the motion for relief under 60.02(2) shall be made not more than one year after the judgment or order was entered. Appellant has waited nearly seven years to move for relief and is thus precluded from relief under Rule 60.02(2).

The other avenue for relief open to the appellant is also contained in Rule 60.02 which has a savings clause as follows:

"This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to set aside a judgment for fraud upon the court."

The Tennessee Supreme Court has interpreted the savings clause as retaining the independent action in equity to impeach or set aside a judgment for fraud, accident, surprise or mistake. *Jerkins v. McKinney*, 533 S.W.2d 275, 281 (Tenn.1976). The *Jerkins* Court described the nature of the independent action in equity as follows:

"Generally, such an independent action must show a recognized ground, such as fraud, accident, mistake or the like, for equitable relief and that there is no other available or adequate remedy. It must also appear that the situation in which the party seeking relief finds himself is not due to his own fault, neglect or carelessness. In this type of action, it is fundamental that equity will not grant relief if the complaining party 'has or by exercising proper diligence would have had, an adequate remedy at law or by proceedings in the original action ... to open, vacate, modify or otherwise obtain relief against, the judgment.' The granting of relief in this unusual type of proceeding lies largely within the discretion of the trial judge." 533 S.W.2d at 281–82.

■ In the present case the appellant's allegations for relief which might fall under the savings clause are limited to fraud. It is thus important to note that unlike Rule 60.02(2), discussed above, the appellant in an independent action to set aside a judgment is limited to the proof of extrinsic fraud. *Patrick v. Skinner*, 199 Tenn. 683, 288 S.W.2d 726 (1956). Examples of extrinsic fraud include:

"Inducing the opposite party by false representations to him or his attorney to stay away from court, or keeping him in ignorance of the suit, or fraudulent conduct of counsel for the successful party whereby the opposite party is deceived." *Thomas v. Dockery*, 33 Tenn.App. 695, 232 S.W.2d 594 (1950).

With regard to false representations made by the opposing party, the party seeking relief must also show justifiable reliance on the misrepresentations. Id. 232 S.W.2d at 597.

■ The determination of whether extrinsic fraud exists in the instant case is hampered by the decision of the Trial Court to prohibit any testimony on the issue of whether appellees fraudulently procured appellant's consent to the adoption petition. *Jerkins v. McKinney*, supra, and *Thomas v. Dockery*, supra, clearly permit the introduc-

tion of such evidence. Nonetheless, after examining the allegations of the appellant, taken as true, in conjunction with the evidence produced at the hearing, it is our opinion that the appellant is not entitled to relief on the basis of extrinsic fraud.

Appellant knew that her children were subject to some kind of adoption procedure. She alleges however that the appellees fraudulently induced her to believe that no ordinary adoption was to take place. Instead they allegedly told her that this would be a special adoption in that she would continue to visit her children and that they would know her as their natural mother. An agreement was to be drawn up embodying appellant's understanding of the adoption, although she understood that this second agreement would not be revealed to authorities. The gist of the allegations then is that appellant misunderstood the effect of the document she signed in reliance upon the misrepresentation of the appellees.

The difficulty with this theory is that appellant did not read the document she signed. This was a serious omission in light of the fact that she fails to allege that appellees prevented her from reading the petition. Her testimony indicates instead that she often signed documents without reading them. No other conclusion can be drawn but that her failure to understand the nature of the petition was due to her own neglect and carelessness. Indeed, even had she not read the contents of the petition, she should have been on notice of its contents since the first page contained in a prominent display the words "PETITION FOR ADOPTION." And, in addition, even though the petitioner did not read the adoption petition, the part of it that she signed indicates in the clearest possible terms that she was joining in the petition deeming it in the best interest of her children "to hereby surrender all of her parental rights and responsibilities and give her consent for said children to be legally adopted by Ernest Ray Raines and Margaret Helen Rains, . . ." These factors indicate that the position in which appellant finds herself is due to her own "fault, neglect or carelessness," thus barring this action under the authority of *Jerkins v. McKinney.*

Finally, the appellant failed to bring this action until nearly seven years after the decree was entered. Rule 60 does not expressly limit the time within which the independent action in equity must be brought. The U.S. Supreme Court in interpreting the analogous provision in the Federal Rules of Civil Procedure on which Rule 60 is modeled held in *Hazel-Atlas Glass Co. v. Hartford Empire Co.,* 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944), that the action must be brought seasonably in light of all the circumstances involved. Although it is difficult to pinpoint the exact time when appellant should have become aware of the seriousness of her participation in the adoption proceeding, it is safe to say that the appellant should have looked into this matter long before the lapse of seven years. Under this circumstance the appellant cannot be said to have brought this action seasonably.

For all of these reasons we are of the opinion that the action of the Trial Court should be affirmed. The costs in this Court shall be taxed to the appellant.

AFFIRMED.

TODD, P. J., and LEWIS, J., concur.