IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 24, 2005 Session

## MICHAEL LOUIS WELCH v. JENNIFER RACHELLE WELCH

**Direct Appeal from the Juvenile Court for Madison County**
**No. 32-0535     Christy Little, Judge**

_____

**No. W2004-01455-COA-R3-JV - Filed September 13, 2005**

_____

The juvenile court granted Appellee's Rule 60.02 Motion to vacate its prior order of legitimation. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

Harold F. Johnson, Jackson, for the appellant, Jennifer Rachelle Welch.

James T. Ryal, Jr., Humboldt, Tennessee, for the appellee, Michael Louis Welch.

**OPINION**

This appeal arises from an order of the Madison County General Sessions Court granting Petitioner/Appellee's Tennessee Rule 60.02 motion to set aside the court's prior order of legitimation. The facts of this case are undisputed and were stipulated at trial. Respondent/Appellant Jennifer Rachelle Welch (Ms. Welch) became pregnant while dating both Michael Louis Welch (Mr. Welch) and Michael Bradley Young (Mr. Young). Ms. Welch gave birth to S.W. on February 18, 1998. On August 29, 1998, Ms. Welch married Mr. Young and listed Mr. Young as S.W.'s biological father on S.W.'s birth certificate. She filed for divorce from Young on August 19, 2000. During the pendency of the divorce proceedings, a DNA test proved that Mr. Young was not S.W.'s biological father. Ms. Welch resumed a sexual relationship with Mr. Welch while her divorce from Mr. Young was pending. Ms. Welch and Mr. Young were divorced in April 2001.

On November 14, 2000, Mr. Welch obtained a DNA test that established he was not the biological father of S.W. Nevertheless, despite knowing he was not S.W.'s father, Mr. Welch sought an order of legitimation in the General Sessions Court of Madison County establishing that

S.W. was his legitimate child. The court entered an order of legitimation on July 10, 2001, and substituted Mr. Welch as S.W.'s biological father on S.W.'s birth certificate and other records. The court also granted Mr. Welch's motion to have S.W's surname name changed from "Young" to "Welch."

Mr. and Ms. Welch married on September 9, 2001. On January 6, 2002, however, Mr. Welch filed for divorce. In March 2003, he also filed a Tennessee Rule of Civil Procedure Rule 60.02 motion in the general sessions court, seeking to have the legitimation decree reversed in order to avoid any obligation of child support. While the divorce was pending in chancery court, the general sessions court heard the Rule 60.02 motion on January 27, 2004. At the hearing, Mr. Welch testified that he originally sought the order of legitimation because he and Ms. Welch believed it was in the best interest of S.W. to have his surname before they married. Mr. Welch also testified that he was seeking relief from the legitimation order because, at the time he petitioned for legitimation, he was unaware of the legal consequences it would have in the event of divorce. He further stated that he thought Ms. Welch should notify S.W.'s "original father" that he had a child. The general sessions court granted Mr. Welch's Rule 60.02 motion upon determining that this case is analogous to *White v. Armstrong*, No. 01A01-9712-JV-00735, 1999 WL 33085 (Tenn. Ct. App. Jan. 27, 1999) (*no perm. app. filed*). Ms. Welch appeals, and we reverse.

## Issue Presented

The sole issue presented by this appeal is whether the general sessions court erred in granting Mr. Welch's Tennessee Rule of Civil Procedure 60.02 motion for relief from its prior order legitimizing S.W. as Mr. Welch's child.

## Standard of Review

We review a trial court's disposition of a Rule 60.02 motion under an abuse of discretion standard. *Spruce v. Spruce*, 2 S.W.3d 192, 194 (Tenn. Ct. App. 1998). An abuse of discretion occurs where the trial court has applied an incorrect legal standard or where its decision is illogical or unreasoned and causes an injustice to the complaining party. *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004). Further, as we have noted in the context of a trial court's consideration of a motion for a new trial based on newly discovered evidence, when exercising its discretion, the trial court must consider the integrity of the court in addition to the rights and diligence of the parties. *Brown v. Weik*, 725 S.W.2d 938, 947 (Tenn. Ct. App.1983).

## Analysis

Mr. Welch asserts that, under *White v. Armstrong*, conclusive evidence that he is not the biological father of S.W. mandates relief under Tennessee Rule of Civil Procedure 60.02. We disagree. Mr. Welch may not rely on Tennessee Rule of Civil Procedure 60.02 to relieve him of his obligation of support in light of the rather unique facts of this case.

Rule 60.02 provides:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this Rule 60.02 does not affect the finality of a judgment or suspend its operation, but the court may enter an order suspending the operation of the judgment upon such terms as to bond and notice as to it shall seem proper pending the hearing of such motion. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to set aside a judgment for fraud upon the court. Writs of error coram nobis, bills of review and bills in the nature of a bill of review are abolished, and the procedure for obtaining relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

Tenn. R. Civ. P. 60.02.

"Rule 60.02 acts as an escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules." *Thompson v. Firemen's Fund Ins. Co.*, 798 S.W.2d 235, 238 (Tenn. 1990). Because of the importance of this "principle of finality," however, the "escape valve" should not be easily opened. *Toney v. Mueller Co.*, 810 S.W.2d 145, 146 (Tenn. 1991). A party seeking relief under Rule 60.02 bears a heavy burden of proof to demonstrate that relief is appropriate in light of the equities of the case. *State ex rel. Ellis v. Humes*, No. W2004-00602-COA-R3-JV, 2005 WL 562753, at * 2 (Tenn. Ct. App. Mar. 10, 2005) (*no perm. app. filed*).

In *White v. Armstrong*, Daniel White (Mr. White) voluntarily legitimated a child he believed was his biological child. The child was born while Mr. White and the child's mother were living together as husband and wife, although Mr. White filed his legitimation petition after he and the child's mother had separated. The child's mother did not contest the petition. Only three years after his legitimation petition was granted did Mr. White begin to suspect that the child was not biologically his. He subsequently obtained genetic testing which established that he was not the child's biological father. The juvenile court declined to relieve Mr. White of his child support obligation. We vacated the juvenile court's order and remanded for relief under Rule 60.02(4). *White v. Armstrong*, No. 01A01-9712-JV-00735, 1999 WL 33085, at *1 (Tenn. Ct. App. Jan. 27, 1999) (*no perm. app. filed*).

In *State ex rel. Ellis v. Humes*, however, we affirmed the trial court's denial of relief under Rule 60.02 in light of the equities presented by the facts of that case. *Ellis*, 2005 WL 562753, at *1. In *Ellis*, the Juvenile Court for Shelby County entered orders in 1994 and 1998 finding Malcolm Humes (Mr. Humes) to be the natural father of O.T.H.E. and N.L.E., respectively. *Id.* The court ordered Mr. Humes to pay child support for both children. *Id.* In April 2003, the children's mother died, and in July 2003 Mr. Humes filed a petition to set aside the order of paternity and support. *Id.* In his petition, he contended that DNA testing had established that he was not the children's natural father. *Id.* At a December 2003 hearing before the Referee, Mr. Humes testified that the children's mother had misled or defrauded him into believing he was the children's natural father. *Id.* at *2. He also testified that he had become suspicious that he might not be the children's biological father as early as June 2000. *Id.* Mr. Humes had DNA tests performed in July 2000, although he testified that he did not receive the results until February 2003. *Id.* Despite knowing that he was not the children's biological father, however, he continued to hold himself out at their father up until the date of the hearing. *Id.* We agreed with the trial court that Mr. Humes had failed to establish fraud or misrepresentation entitling him to relief under Rule 60.02.

Our case law clearly rejects a bright-line rule that properly admitted genetic tests conclusively excluding a legal father from paternity automatically entitle the legal father to relief under Rule 60.02. *State ex rel. Ellis v. Humes*, No. W2004-00602-COA-R3-JV, 2005 WL 562753, at *3 (Tenn. Ct. App. Mar. 10, 2005) (*no perm. app. filed*); *Richards v. Read*, No. 01A01-9708-PB00450, 1999 WL 820823 at *12 (Tenn. Ct. App. July 27, 1999) (*no perm. app. filed*) (Cottrell, J, concurring). Rather, the determination of whether Rule 60.02 relief is appropriate depends on a weighing of the equities of the case. *Ellis*, 2005 WL 562753 at *3. "[T]he gravamen of Rule 60.02(4) relief in these types of cases lies in equity." *Id.* at *4. In *Richards v. Read*, Judge Cottrell noted in her concurring opinion "that every father who has voluntarily acknowledged paternity and who is later proved not to be the child's biological father may be relieved from the parental obligation he previously undertook . . . is not the current state of the law." *Richards*, 1999 WL 820823 at *12.

In *Richards*, James Edward Richards, III (Mr. Richards) and Cynthia Ann Read (Ms. Read) were involved in a sexual relationship when Ms. Read became pregnant. *Id.* at *1. Ms. Read led Mr. Richards to believe he was the child's father, and Mr. Richards voluntarily legitimated the child in 1984. *Id.* In 1992, after beginning a serious relationship with a woman he later married, Mr. Richards obtained blood tests establishing that he was not the child's biological father. *Id.* at *2. This Court determined Mr. Richards was entitled to relief under Rule 60.02(4). *Id.* at *11. We took pains to note in *Richard*s, however, that "[t]he trial judge did not like his decision or his alternatives. Neither do we. An innocent child has been victimized by the selfish conduct of two adults." *Richards v. Read*, No. 01A01-9708-PB00450, 1999 WL 820823 at *11 (Tenn. Ct. App. July 27, 1999) (*no perm. app. filed*) (Cottrell, J, concurring).

The present case is clearly distinguishable from *White* and *Richards*. Mr. White and Mr. Richards were involved in sexual relationships with the mothers of the children in *White* and *Richards*, respectively, and were led to believe the children were, in fact, biologically theirs. Mr. Welch, on the other hand, acknowledges that he petitioned the juvenile court to legitimate S.W. as

-4-

his child with full and unequivocal knowledge that he was not S.W.'s biological father. He voluntarily assumed responsibility for and parentage of a child knowing the child was not biologically his. Further, in *White*, we determined that the evidence did not support a finding that Mr. White had willfully perpetrated a fraud on the court in the original legitimation proceeding. In the present case, however, Mr. Welch unambiguously defrauded the court in the original legitimation proceeding. Thus, as in *Ellis*, conclusive evidence that Mr. Welch is not S.W.'s biological father is not sufficient, without more, to warrant relief under Rule 60.02. Clearly, equity does not require the court to relieve Mr. Welch of obligations and privileges for which he voluntarily, knowingly, and even fraudulently petitioned the court.

Mr. Welch submits that such a holding is contrary to Tennessee's public policy of assuring that biological parents take responsibility for their children. We must again disagree. Certainly, the paternity statutes "evince a policy that children should be supported by their fathers." *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). Thus, the child support provisions pertaining to divorce decrees, including the child support guidelines, are incorporated by the paternity statutes. *Id.* This duty to support arises out of the parent-child relationship and, unlike a property right, "cannot be 'bargained away' by contract." *C.J.H. v. A.K.G.*, No. M2001-01234-COA-R3-JV, 2002 WL 1827660, at *4 (Tenn. Ct. App. Aug. 9, 2002) (*no perm. app. filed*) (quoting *Commonwealth ex rel. Hager v. Woolf*, 276 Pa. Super. 433, 419 A.2d 535, 538 (Pa. Super. Ct. 1980)); *Berryhill*, 21 S.W.3d at 191. Additionally, adoptive parents undertake all parental obligations, including the duty to support. Tenn. Code Ann. § 36-1-121; *O'Daniel v. Messier*, 905 S.W.2d 182,186 (Tenn. Ct. App. 1995) (holding adoptive parents acquire all parental rights and responsibilities).

All parents, including adoptive parents, have an obligation to support their children unless and until such time as their parental rights are terminated. The state may not deprive a parent of their fundamental right to the custody and control of their child, moreover, unless clear and convincing evidence supports a finding that a statutory ground for termination exists and that termination is in the best interests of the child. Tenn. Code Ann. § 36-1-113(c)(2001). The same high standard of proof is required to terminate the rights of an adoptive parent. *In re M.O.*, --- S.W.3d ----, 2005 WL 457694, at *4 (Tenn. Ct. App.2005); *See Simmons v. Simmons*, 900 S.W.2d 682, 684 (Tenn.1995).

A man who voluntarily has legitimated a child has declared that he is the child's natural father. Accordingly, he will be held to the same duty of support unless his parental rights are terminated or the balance of equities weighs in favor of releasing him from that duty. *Richards v. Read*, No. 01A01-9708-PB00450, 1999 WL 820823 at *7 (Tenn. Ct. App. July 27, 1999) (*no perm. app. filed*) (Cottrell, J, concurring)(citing *Evans v. Evans*, 140 S.W. 745 (1911)); *Damron v. Damron*, 367 S.W.2d 476 (1963); Tenn. Code Ann. § 36-5-101 (Supp.1998); Tenn. Code Ann. § 36-2-203(b)(2)(1996)). Rule 60.02(4) enables a court to relieve a party from an order of legitimation when it is no longer equitable that the judgment should have prospective effect." However, as we noted in *Richards*,

[a]s ancient as equity itself is the maxim "he who seeks equity must do equity."

. . .

> The maxim that he who seeks equity must do equity is fundamental, and no principle is better settled than that a court of chancery in granting equitable relief to a complainant will require of him whatever the defendant may, in good reason and good conscience, be entitled to in reference to the subject matter of the suit. The condition thus imposed upon the complainant is, as it were, the price of the decree which the court gives him.

*Id.* (quoting *East Tenn. and Western N.C. Ry. Co. v. Robinson*, 86 S.W.2d 433, 439 (Tenn. App. 1935)).

We cannot fathom how this state's policy of requiring parents to support their children is undermined by refusing to grant relief under Rule 60.02 to a competent adult who knowingly has perpetuated a fraud upon the court. Mr. Welch voluntarily assumed parentage of S.W.; he has declared to the court that he is S.W.'s natural father. There is not even a suggestion of fraud or mistake in this case. He cannot disavow the obligation he knowingly undertook merely because he failed to recognize it would extend beyond the duration of his marriage to S.W.'s mother.

In this case, proof that Mr. Welch is not, in fact, S.W.'s biological father is ineffective to warrant relief under Rule 60.02 where Mr. Welch knew he was not S.W.'s biological father at the time he petitioned the court for legitimation. Like an adoptive parent, Mr. Welch assumed all the responsibilities of parenthood knowing S.W. was not biologically his. We can imagine no equitable basis upon which to relieve him from his duty pursuant to Rule 60.02.

Certainly, the "escape valve" provided by Rule 60.02 was not designed to enable competent adults to escape from judgments that they fraudulently and voluntarily sought and obtained in an earlier proceeding. Moreover, while denying relief under Rule 60.02 in this case does not violate this state's public policy of ensuring that children are supported by their parents, granting relief in this case would violate our public policy of protecting the integrity of our courts. *See, e.g., Alexander v. Jackson Radiology Assocs, P.A.*, 156 S.W.3d 11, 17 (Tenn. Ct. App. 2004)(holding trial court did not abuse its discretion when it dismissed plaintiff's action as sanction for acts "offend[ing] the basic principles underlying our judicial system," including abuse of discovery process, destruction of evidence, and lying under oath).

Children are not property and are not disposable as a matter of convenience. This truth is foundational to the statutory child support, custody, and adoption scheme developed by our legislature and applied by our courts. Moreover, the courts do not look favorably upon being invoked to participate in a falsehood. When a party seeks relief under Rule 60.02 from a prior order of legitimation, equity requires relief where there is evidence of mistake or fraud or where prospective application of the order works an injustice. However, in the absence of other considerations not present in this case, a party who legitimizes a child knowing that child is not

-6-

biologically his has, for all purposes, evidenced a decision to enter into an adoption-like parent-child relationship. That a judgment creating this relationship should have prospective application works no inequity.

As noted above, we generally will not overturn a trial court's disposition of a Rule 60.02 motion absent an abuse of discretion. In the current case, the trial court's order reflects an apparent misapplication of *White v. Armstrong*. The trial court was not bound by *White* to grant Mr. Welch's Rule 60.02 motion based solely on conclusive proof that Mr. Welch is not the biological father of S.W. where Mr. Welch undisputedly knew he was not S.W.'s father at the time he petitioned for legitimation. Moreover, there is no equitable basis for relief in this case, where Mr. Welch seeks to abuse the integrity of the court for his personal benefit. The balance of equities weighs heavily against Mr. Welch.

## Holding

In light of the foregoing, the judgment of the trial court is reversed. Costs of this appeal are taxed to the Appellee, Michael Louis Welch.

_____
DAVID R. FARMER, JUDGE