# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
July 17, 2013 Session

## JEFFREY MATTHEW BROWN v. JENNIFER LINDSEY (WILLIAMS) BROWN

### Direct Appeal from the General Sessions Court for Hardin County
### No. 6888     Ron Harmon, Judge by Interchange

---

### No. W2013-00263-COA-R3-CV - Filed September 12, 2013

---

Husband filed a petition pursuant to Rule 60.02 to set aside a provision of the parties' divorce decree that required him to pay $80,000 to Wife in accordance with an antenuptial agreement. He sought relief under Rule 60.02(2) for fraud, misrepresentation, or other misconduct of an adverse party. The trial court denied Husband's petition and "confirmed" the divorce decree. We find that the trial court applied an incorrect legal standard, and as a result, it did not properly exercise its discretion. We also find that Wife's conduct constituted misrepresentation or other misconduct within the meaning of Rule 60.02(2). Accordingly, we reverse the trial court's order denying Husband's Rule 60 petition and we vacate the challenged portion of the divorce decree.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the General Sessions Court Reversed in Part, Vacated in Part and Remanded

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., joined, and J. STEVEN STAFFORD, J., separately dissented.

Dennis W. Plunk, Savannah, Tennessee, for the appellant, Jeffrey Matthew Brown

Mary Jo Middlebrooks, Jackson, Tennessee, for the appellee, Jennifer Lindsey (Williams) Brown

## OPINION

### I. FACTS & PROCEDURAL HISTORY

Jeffrey Matthew Brown ("Husband") and Jennifer Lindsey Brown ("Wife") were married in July 2004. Prior to their marriage, Husband and Wife executed an antenuptial agreement, with the independent advice of their respective attorneys. In April 2008, the parties separated, and Husband filed a complaint for divorce in May 2008. His complaint referred to the parties' antenuptial agreement and asked that it be "applied and enforced by the Court in this divorce proceeding," as "[s]aid Antenuptial Agreement specifically provides for the disposition and settlement of properties by and between the parties and also contains provisions for the marital support for [Wife] upon dissolution of the marriage." Wife filed an answer and counterclaim for divorce, in which she admitted that the parties had entered into the antenuptial agreement.

The parties' antenuptial agreement contained a provision entitled, "Alimony and Maintenance," which provided, in pertinent part, as follows:

> (11) ALIMONY AND MAINTENANCE. Although the parties contemplate a long and lasting marriage, terminated only by death of one of the parties, they also recognize the possibility of divorce. If the marriage is terminated, regardless of which party is at fault or initiates such action and regardless of jurisdiction, venue, or location of such action, the parties hereby specifically agree that this Agreement, to the extent allowed by applicable law at the time of such divorce, shall serve as a bar or estoppel of the Wife to receive any alimony, whether, pendente lite or permanent, except the payments as set forth below, which might otherwise be available to her under applicable law, even if there might have been a substantial difference between her rights under this Agreement and what might be awarded by a court in the absence of this Agreement. . . .
> (a) . . .
> . . .
> (5) If the parties are married more than four years but less than five years prior to their divorce, the Wife shall receive from Husband the sum of $80,000.00.
> . . .
> (b) If Wife has a sexual affair or commits adultery during the marriage or without grounds Wife leaves or abandons Husband, then Husband shall not owe any of the foregoing payments to Wife.

The parties and their attorneys met on February 18, 2009, and they executed a marital dissolution agreement that contained the following provision:

> PAYMENT PURSUANT TO ANTENUPTIAL AGREEMENT. The parties acknowledge that they entered into prior to their marriage an Antenuptial Agreement dated July 23, 2004, and each agree to be bound by the terms and provisions thereof. Paragraph (11)(a)(5) provides that if the parties are married more than four (4) but less than five (5) years prior to their divorce, the Wife shall receive from Husband the sum of $80,000.00. In accordance with that provision, Husband does hereby agree to pay to Wife the sum of $40,000.00 upon execution of this Marital Dissolution Agreement and agrees to pay the balance thereof, being $40,000.00, no later than six (6) months from the date of execution of this Marital Dissolution Agreement. . . .

A final decree of divorce was entered the following day, on February 19, 2009. The divorce decree stated that the MDA was "hereby incorporated and merged in the Order." Husband paid Wife $40,000 in February 2009 and $40,000 in August 2009.

Approximately six and a half months after the divorce decree was entered, Wife gave birth to a child, on or about September 9, 2009. This alerted Husband to the fact that Wife must have had a sexual affair while they were still married. On January 7, 2010, Husband filed a petition for relief pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure, asking the court to vacate the provision of the MDA requiring him to pay $80,000 to Wife, and to order Wife to return the $80,000 sum to Husband. Husband argued that, due to Wife's sexual affair during the marriage, he did not owe the $80,000 sum to Wife pursuant to Paragraph 11.b. of the antenuptial agreement. Husband alleged that when he and Wife entered into the MDA in February 2009, Wife failed to disclose that she had committed adultery and had a sexual affair during the marriage and was, in fact, pregnant at the time of the execution of the MDA. He claimed that "[Wife] knew that [Husband] did not owe her $80,000.00 under the terms of said Antenuptial Agreement but, through [Wife's] non-disclosure and concealment leaving [Husband] ignorant of the [Wife's] sexual affair or adultery during the marriage, [Wife] unjustifiably induced [Husband] to agree to pay the $80,000.00 by the terms of said Marital Dissolution Agreement." Husband pointed out that, in the MDA, both parties specifically agreed to be bound by the terms and provisions of the antenuptial agreement. He claimed that he paid the $80,000 sum to Wife in good faith in accordance with the antenuptial agreement, and that Wife violated the duty of good faith and fair dealing by failing to disclose that she was not contractually entitled to the money. He claimed that Wife had a duty to disclose the pertinent facts because of the confidential relationship that exists between married persons. In sum, he argued that Wife fraudulently entered into the MDA by fraudulently concealing her affair and pregnancy from him, and

-3-

therefore, relief was appropriate pursuant to Rule 60.02(2).

In response to discovery, Wife admitted that she did in fact have a sexual affair and conceive a child with another man while she was married to Husband. She identified the date of the affair as December 15 or 16, 2008, some two months before the MDA was executed on February 18, 2009. She admitted that she did not inform Husband about the affair and that he did not have knowledge of the affair.

While Husband's Rule 60 motion was pending, the parties' attorneys apparently concluded that because the facts were undisputed, they would file cross-motions for summary judgment. Husband filed a motion for summary judgment with regard to his entitlement to Rule 60 relief, stating the issue as follows: "The central issue posed by [Husband's] Motion for Summary Judgment is whether or not [Wife's] concealment and silence about her sexual affair and adultery committed during the parties' marriage constitutes fraud for purposes of the Court granting [Husband] relief pursuant to Rule 60.02(2) of the Tennessee Rules of Civil Procedure."

Wife filed a response and a cross-motion for summary judgment.[1] She argued that Husband was attempting to enforce a provision of the antenuptial agreement that was no longer enforceable because the antenuptial agreement had merged into the MDA, and the MDA had merged into the order of the court.

The trial court entered an order denying both parties' motions for summary judgment. The order stated:

> These parties entered into a marital dissolution agreement which was approved by the Court and which was presumably drafted and reached with the assistance of counsel, both parties having been represented at the time. Any matters in controversy were merged into that agreement and were approved by the Court. That order is final.

Based upon this finding, the trial court "confirmed" the February 19, 2009 divorce decree. The trial court later entered an amended order, clarifying that its previous order "effectively disposed of" Husband's petition for Rule 60 relief and was a final order that resolved all pending claims between the parties. Husband timely filed a notice of appeal.

---

[1] Wife's cross-motion for summary judgment raised some other issues that are not relevant to the issues presented on appeal.

## II.  ISSUES PRESENTED

Husband presents five separate issues for review on appeal, which we have slightly restated:

1.  Whether the trial court erred in finding that the antenuptial agreement was unenforceable when the parties expressly agreed to be bound by its terms in their MDA;
2.  Whether the trial court erred in finding that any matters in controversy were merged into the MDA and divorce decree;
3.  Whether the trial court erred in failing to find that the parties were subject to a duty of good faith and fair dealing in performing and complying with the terms of the antenuptial agreement;
4.  Whether the trial court erred in failing to find that Wife's nondisclosure of her affair constituted fraudulent concealment; and
5.  Whether the trial court erred in denying Husband post-judgment relief by failing to order Wife to repay the $80,000 sum to which she was not contractually entitled pursuant to the antenuptial agreement.

Wife naturally contends that the trial court's ruling was correct, and she seeks an award of her attorney's fees on appeal.[2]

For the following reasons, we reverse the trial court's order denying Husband's petition for Rule 60 relief and we vacate that portion of the divorce decree requiring Husband to pay Wife $80,000.

## III.  DISCUSSION

Despite the host of issues raised on appeal, and the somewhat awkward procedural posture of this case, we find that the main issue is relatively straightforward. Husband filed a petition to set aside a provision of a divorce decree, pursuant to Rule 60.02, alleging fraud. We review a trial court's ruling on a Rule 60.02 motion for abuse of discretion. ***Discover Bank v. Morgan***, 363 S.W.3d 479, 487 (Tenn. 2012) (citing *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003)). "Abuse of discretion is found 'only when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party.'" ***Id.*** (quoting *State v. Jordan*, 325 S.W.3d 1, 39 (Tenn. 2010)).

---

[2]  We note that Wife does not argue that the antenuptial agreement was not binding or was not enforceable.

"If the appropriate facts are established, a trial court may relieve a party of obligations imposed in a final judgment." ***Wine v. Wine***, 245 S.W.3d 389, 397 (Tenn. Ct. App. 2007) (citing *Gaines v. Gaines*, 599 S.W.2d 561, 564 (Tenn. Ct. App. 1980)). Rule 60.02 of the Tennessee Rules of Civil Procedure provides "an exceptional remedy that enables parties to obtain relief from a final judgment." ***DeLong v. Vanderbilt University***, 186 S.W.3d 506, 511 (Tenn. Ct. App. 2005) (citing *Nails v. Aetna Ins. Co.*, 834 S.W.2d 289, 294 (Tenn. 1992); *Hungerford v. State*, 149 S.W.3d 72, 76 (Tenn. Ct. App. 2003)). The Rule was designed to strike a balance between the competing principles of finality and justice. ***Id.*** (citing *Banks v. Dement Constr. Co.*, 817 S.W.2d 16, 18 (Tenn. 1991); *Rogers v. Estate of Russell*, 50 S.W.3d 441, 444 (Tenn. Ct. App. 2001)). "A party seeking relief under Rule 60.02 bears a heavy burden of proof to demonstrate that relief is appropriate in light of the equities of the case." ***Welch v. Welch***, 195 S.W.3d 72, 75 (Tenn. Ct. App. 2005) (citing *State ex rel. Ellis v. Humes*, No. W2004-00602-COA-R3-JV, 2005 WL 562753, at * 2 (Tenn. Ct. App. Mar.10, 2005)).

> In this case, Husband sought relief pursuant to Rule 60.02(2), which provides:
> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: . . . (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party[.]

Tenn. R. Civ. P. 60.02(2). Simply put, the Rule "specifically provides that otherwise final judgments tainted by fraud, misrepresentation, or other misconduct may be set aside within one year after their entry."[3] ***Duncan v. Duncan***, 789 S.W.2d 557, 563 (Tenn. Ct. App. 1990). "Rule 60.02(2) permits the Court to relieve a party from a final judgment if fraud was committed in the earlier proceedings, regardless of whether the fraud is denominated extrinsic or intrinsic." ***Brown v. Raines***, 611 S.W.2d 594, 597 (Tenn. Ct. App. 1980). Post-judgment relief pursuant to Rule 60.02(2) "is warranted when the moving party proves with clear and convincing evidence the existence of conduct amounting to 'an intentional contrivance by a party to keep [the] complainant and the Court in ignorance of the real facts touching the matters in litigation, whereby a wrong conclusion was reached, and positive wrong done to the complainant's rights.'" ***Duncan***, 789 S.W.2d at 563 (quoting *Leeson v. Chernau*, 734 S.W.2d 634, 638 (Tenn. Ct. App. 1987)). Some examples of grounds for granting post-judgment relief pursuant to Rule 60.02(2) include the withholding of evidence, or the knowing use of perjured testimony. ***Id.*** (citing *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 923 (1st Cir. 1988) (withholding evidence); *Harre v. A.H. Robins Co.*, 750 F.2d 1501, 1503 (11th Cir. 1985) (perjured testimony); *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978) (withholding evidence); *Pina v. McGill Dev. Corp.*, 388 Mass. 159, 445

---

[3] Husband's petition was filed within one year.

N.E.2d 1059, 1063-64 (1983) (perjured testimony); 11 C. Wright & A. Miller, Federal Practice and Procedure § 2861 (1973)). When a timely Rule 60.02(2) motion is filed and substantiated, courts "should unhesitatingly set the tainted judgment aside." *Id.*

The trial court denied Husband's petition for Rule 60 relief on the basis that "[a]ny matters in controversy were merged into [the MDA] and were approved by the Court [in the divorce decree]. That order is final." The trial court did not make any findings regarding Wife's conduct, or the allegation of fraud, and it did not discuss the standard for granting relief pursuant to Rule 60.02. To the extent that the trial court's order suggests that the divorce decree was not subject to challenge, we find that the court applied an incorrect legal standard, constituting an abuse of discretion. We recognize that "[a]fter a divorce decree becomes final, a marital dissolution agreement becomes merged into the decree as to matters of child support and alimony," *Hannahan v. Hannahan*, 247 S.W.3d 625, 627 (Tenn. Ct. App. 2007), and an award of alimony in solido "is not modifiable as a matter of law once the order is final." *Wine v. Wine*, 245 S.W.3d 389, 396 (Tenn. Ct. App. 2007). However, a party may nevertheless "seek relief from a final decree pursuant to Rule 60.02 under a limited set of circumstances." *Id. See, e.g.*, *Bates v. Bates*, No. M2010-02590-COA-R3-CV, 2012 WL 2412447, at \*5-6 (Tenn. Ct. App. June 26, 2012) (affirming a trial court's decision granting a Rule 60.02(2) motion to set aside and vacate an alimony award based upon the wife's misrepresentations about the nature of her assets during trial); *Sheppard v. Sheppard*, No. M2009-00254-COA-R3-CV, 2010 WL 3749420, at \*4 (Tenn. Ct. App. Sept. 27, 2010) (affirming the grant of a Rule 60 motion and modification of an alimony award where the husband had provided erroneous information regarding his income).

We find that Husband is entitled to relief pursuant to Rule 60.02(2) under the circumstances of this case. Husband submitted clear and convincing, and in fact, undisputed proof that Wife had a sexual affair while she was married to Husband. As a result, it is clear that Wife was not contractually entitled to the $80,000 alimony payment according to the antenuptial agreement. Two months after Wife had the affair, she and Husband executed the MDA which contained a provision entitled, "PAYMENT PURSUANT TO ANTENUPTIAL AGREEMENT." It stated, "The parties acknowledge that they entered into prior to their marriage an Antenuptial Agreement dated July 23, 2004, *and each agree to be bound by the terms and provisions thereof*." (Emphasis added). The MDA specifically stated that the $80,000 alimony payment to Wife was being made "pursuant to" and "[i]n accordance with" the antenuptial agreement. By executing the MDA containing these terms, we find that Wife affirmatively represented, to Husband and to the court, that she was contractually entitled to the $80,000 payment pursuant to the antenuptial agreement, when in fact she was not. Wife's conduct amounts to "an intentional contrivance . . . to keep [Husband] and the Court in ignorance of the real facts touching the matters in litigation, whereby a wrong conclusion was reached, and positive wrong done to [Husband's] rights." *Duncan*, 789 S.W.2d at 563.

We note Wife's argument on appeal that Husband waived his right to complain because, during the divorce proceedings, he did not insist that she comply with the written discovery requests he had sent to her, prior to signing the MDA. Wife basically argues that if Husband had only asked her about previous affairs, she would have told him the truth. Because Wife never told Husband that she did *not* have an affair, she claims that she did not engage in fraud, misrepresentation, or other misconduct pursuant to Rule 60.02(2). We are not persuaded. As noted above, this case does not simply involve silence by Wife. She signed the MDA specifically acknowledging that she had executed the antenuptial agreement, expressly agreeing, again, to be bound by its terms, and agreeing that Husband would pay her $80,000 "in accordance with" the antenuptial agreement, when she obviously knew that she was not contractually entitled to the money. This affirmative action by Wife distinguishes the case at bar from cases involving mere silence when there is no duty to disclose.[4]

Because we find clear and convincing evidence of misrepresentation and misconduct by Wife, we find that the trial court erred in denying Husband's petition for Rule 60 relief. The lower court's ruling was based upon an incorrect legal standard and employed reasoning that caused an injustice to Husband. Accordingly, we reverse the trial court's order denying Husband's petition for Rule 60 relief and vacate that portion of the divorce decree requiring Husband to pay $80,000 to Wife.

Wife argues on appeal that if we vacate the $80,000 payment that was provided by the MDA, we must vacate "the entire order," and "[t]he parties will then both be free to conduct full, vigorous discovery, attend mediation, and then litigate the matter in Court should a subsequent agreement not be reached." We find no support for Wife's assertion. The MDA incorporated into the divorce decree contained a severability clause which provided:

> SEVERANCE. Should the Court hold that any portion of this Agreement is invalid, the remainder shall be in full force and effect an[d] the invalid portion shall be struck from the Agreement or modified as the Court shall order.

---

[4] We note that the dissent suggests that Husband did not sufficiently raise the issue on appeal of whether Wife made an "affirmative representation" that would constitute fraud or misconduct under Rule 60.02. He points out that Husband's brief never used the phrase "affirmative statement" but repeatedly mentioned Wife's "silence" and "non-disclosure." However, the very first issue presented by Husband on appeal asserted that Husband was entitled to relief because the parties had executed an antenuptial agreement and then "expressly agreed to be bound by its terms" within the provisions of the MDA. Husband argued that the "central" fact on appeal was Wife's express agreement in the MDA to be bound by the terms of the antenuptial agreement. Thus, even though Husband never described Wife's agreement as an "affirmative representation," he was clearly relying upon her *actions*, even though he raised other issues regarding her *inaction*. Our analysis was in clear response to an argument legitimately raised and presented on appeal.

Consequently, it is not necessary or appropriate to vacate the "entire" divorce decree.

### B.    *Attorney's fees on Appeal*

Wife has requested an award of her attorney's fees on appeal. She asks that we exercise our discretion to grant her request, claiming only that such an award would be "equitable" in this case. Exercising our discretion, we respectfully deny Wife's request.

### IV.    CONCLUSION

For the aforementioned reasons, we reverse the order of the general sessions court denying Husband's petition for Rule 60 relief, we vacate the provision of the divorce decree requiring Husband to pay Wife $80,000, and we remand for further proceedings. We decline to award attorney's fees to Wife. Costs of this appeal are taxed to the appellee, Jennifer Lindsey (Williams) Brown, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.